[L. A. No. 24893.   In Bank.   Mar. 10, 1959.]

MILICA P. WATENPAUGH, Plaintiff and Respondent, v. STATE TEACHERS' RETIREMENT SYSTEM et al., Defendants and Respondents; FRANK MARION WATENPAUGH, JR., et al., Appellants.

Walter Wencke and Robert G. Carlson for Appellants.

Vincent Whelan for Plaintiff and Respondent.

No appearance for Defendants and Respondents.

GIBSON, C. J.—This action was brought by the widow of Frank M. Watenpaugh, Sr., a member of the State Teachers' Retirement System, to determine whether death benefits thereunder should be paid to her or to his children by a previous marriage. The children and the retirement system were joined as defendants.

Mr. Watenpaugh was a teacher at San Diego State College, and in 1944 he executed and filed a designation of beneficiary which named his former wife, since deceased, as primary beneficiary and his children as secondary or contingent beneficiaries. The claim of the children is based on this designation. In March 1955 he married plaintiff, and about June 9, 1955, a

blank form for designation of beneficiary supplied by the retirement system was filled out, signed and witnessed. It stated that any previous nomination was revoked and named plaintiff as primary beneficiary and defendant children as contingent beneficiaries. Mr. Watenpaugh took the executed designation form home and placed it in a folder on his desk. Sometime later plaintiff moved the folder from the desk to a bookcase, where it remained until after Mr. Watenpaugh's death.

In January 1956 Mr. Watenpaugh suffered a heart attack, and he was confined in a hospital and at home for some time, but he recovered to the extent that he took rides in the country, walked around his property and did some accounting work. He died on March 23, 1956, and two or three weeks later plaintiff discovered the executed designation form in the folder. She gave the form to her attorney, who on April 18 mailed it to the retirement system together with a certificate of death. The retirement system refused to pay the death benefits to plaintiff on the ground that the designation form was not filed by Mr. Watenpaugh during his lifetime.

The original designation form filed with the retirement system in 1944 provided in part: "Should I survive the above named beneficiaries, I understand that such Death Benefit will be paid to my estate or to such other beneficiary or beneficiaries as I may hereafter nominate by written designation duly filed with the State Teachers' Retirement System, all in accordance with the provisions of said statutes." The body of the 1955 designation form contains substantially the same provision, and, in addition, on the back of the form it is stated that the statute provides in effect that a member's contributions will "be paid to his estate or such person as he shall have nominated by written designation duly filed with the Retirement Salary Board. . . . The designation of a beneficiary may be revoked and a new designation made, at the option of designator, the form on the reverse side hereof being used for both the original and changing designations. . . . Acknowledgment of receipt of the first beneficiary designation will not be made, because every person will be followed until a form has been filed in the retirement office. Revocations and designations of new beneficiaries will be acknowledged, to avoid the loss of completed forms in transit, which might not come to light until after death."

The trial court found that by executing the 1955 designation Mr. Watenpaugh intended to revoke the prior designation and to nominate plaintiff as beneficiary and that

he believed he had done so. It was further found that by bringing the designation home he placed it under plaintiff's control and in her possession, thereby permitting and authorizing her to do whatever else might be necessary to carry out his intention, including the filing of the designation with the retirement system either during his life or after his death, and that he thus effected a present revocation of the prior designation and a present nomination of plaintiff as beneficiary. The evidence, as summarized above, taken with the permissible inferences which the trial court could draw therefrom, was sufficient to sustain the findings and the judgment in favor of plaintiff.

■ Moreover, there was other evidence showing the clear intention of Mr. Watenpaugh which was erroneously refused admission. Defendant children objected to evidence of the decedent's oral declarations, and plaintiff made an offer to prove that he told her in March or April of 1955 that he had no pension but that there was a State Teachers' Retirement Fund and in the event of his death she would be the beneficiary of the fund. She also offered to prove that several months later he told her that in the event of his death she would have to sell the house because she could not keep up the payments, but that if she were careful she would be able to get along on the Teachers' Retirement Fund. The trial court sustained defendents' objection and rejected the offer of proof.

The offered evidence was relevant on the issue of the intent with which decedent executed the designation of beneficiary, and it should not have been rejected. ■ The declarations of a decedent may be admissible under certain circumstances to prove a state of mind at a given time although uttered before or after that time, on the theory that under these circumstances the "stream of consciousness has enough continuity so that we may expect to find the same characteristics for some distance up or down the current." (*People* v. *One 1948 Chevrolet Conv. Coupe*, 45 Cal.2d 613, 620-621 [290 P.2d 538, 55 A.L.R.2d 1272] [vehicle owner's knowledge that occupant possessed narcotic]; see Chafee, *Progress of the Law—Evidence*, 1919-1922, 35 Harv.L.Rev. 428, 444; Witkin, California Evidence (1958) § 265, pp. 302-303.) Declarations have thus been admitted in cases involving mental condition at the time of executing a will (*Estate of Sargavak*, 35 Cal.2d 93, 96-98 [216 P.2d 850, 21 A.L.R.2d 307]; *Estate of Anderson*, 185 Cal. 700, 720 [198 P. 407]; *Estate of Carson*, 184 Cal. 437, 445

[194 P. 5, 17 A.L.R. 239]), making or delivery of a deed (*DeCou* v. *Howell*, 190 Cal. 741, 750 [214 P. 444] ; *Williams* v. *Kidd*, 170 Cal. 631, 648 [151 P. 1, Ann.Cas. 1916E 703]), transfer of bonds (*Schooler* v. *Williamson*, 192 Cal. 472, 476 [221 P. 195]), transfer of stock (*Hansen* v. *Bear Film Co.*, 28 Cal.2d 154, 173-174 [168 P.2d 946]), and reconciliation of spouses (*Whitlow* v. *Durst*, 20 Cal.2d 523, 524-525 [127 P.2d 530]). ■ In the Hansen and Whitlow cases it is stated broadly that, when intent is a material element of a disputed fact, declarations of a decedent made after as well as before an alleged act that indicate the intent with which he performed the act are admissible in evidence as an exception to the hearsay rule. The present case is closely analogous to those involving wills, deeds and other transfers of property, and comes within the rule as above stated.

■ Under the doctrine of invited error, a party may not object to the sufficiency of the evidence to support a finding against him when the lack is the result of improper exclusion of evidence at his own instance. (*Gray* v. *Southern Pac. Co.*, 23 Cal.2d 632, 644 [145 P.2d 561] ; *Ralph* v. *Anderson*, 187 Cal. 45, 49 [200 P. 940] ; *Scholey* v. *Steele*, 59 Cal.App.2d 402, 404 [138 P.2d 733] ; *Hansen* v. *California Bank*, 17 Cal.App. 2d 80, 95-96 [61 P.2d 794] ; *Martin* v. *Postal Union Life Ins. Co.*, 16 Cal.App.2d 570, 576 [61 P.2d 333] ; *First Nat. Bank* v. *Kinslow*, 2 Cal.App.2d 456, 458-459 [38 P.2d 163].) ■ A party who has prevented proof of a fact by his erroneous objection will not be permitted to take advantage of his own wrong, and a reviewing court will assume that the fact was duly proved. (*Zainudin* v. *Meizel*, 119 Cal.App.2d 265, 270 [259 P.2d 460].)

■ The relevant statutes do not, as contended by defendant children, require that the designation form be filed with the Retirement Board by the member prior to his death. Section 14575 of the Education Code, as it read prior to 1957, provided in part that, upon death of a member before retirement, "there shall be paid to such beneficiary as he has nominated by written designation duly filed with the Retirement Board" certain prescribed benefits.* Section 14661 then provided in part, "The nomination of a beneficiary under the Retirement System . . . may be revoked at the pleasure of the member . . . and a different beneficiary nominated by a written instrument duly executed and filed with the board." The sec-

---

*The 1957 amendments of sections 14575 and 14661 of the Education Code involved changes not material to this case.

tions do not expressly preclude a filing of the designation form after the member's death, and no persuasive arguments are presented why they should be so construed.

█ The purpose of the provisions requiring the filing of a change of beneficiary is largely to protect the retirement system against the possibility of being called upon to pay twice. A second purpose, no doubt, is to provide a method of ascertaining the desire and intent of the member with reference to the payment of death benefits. █ The statute should be construed to give effect to an executed designation when there is a clear manifestation of intent by the member to make the change and the designation is filed promptly after death so as to prevent any prejudice to the retirement system.

Our interpretation is in accord with the decisions involving War Risk or National Service Life Insurance issued to men in military service, where the purpose of the provisions of the statutes and regulations requiring the filing of a change of beneficiary is also largely to protect the government against being called upon to pay twice. (See 2 A.L.R.2d 489, 491.) It has been held that literal compliance with such regulations is not necessary to obtain a change of beneficiary where it is established that there was an intention to change and there was some affirmative action evidencing the exercise of the right to change. (*Aguilar* v. *United States,* 226 F.2d 414, cert. den. 351 U.S. 955 [76 S.Ct. 852, 100 L.Ed. 1478] ; *Kendig* v. *Kendig,* 170 F.2d 750, 751; *cf. Shack* v. *United States,* 234 F.2d 934, 936.)

█ It is true that in ordinary life insurance contracts the general rule is that there must be strict compliance with the method prescribed by the policy for change of beneficiary. (See *Cook* v. *Cook,* 17 Cal.2d 639, 648 [111 P.2d 322] ; *Pimentel* v. *Conselho Supremo,* 6 Cal.2d 182, 187-188 [57 P.2d 131].) However, the provisions for death benefits under retirement systems differ in important respects from ordinary life insurance policies. For example, the retirement benefits are completely statutory in origin, membership in the retirement system is compulsory, and the requirements for change of beneficiary are not subject to negotiation. The cases dealing with ordinary life insurance contracts are therefore not controlling. Language in *Wicktor* v. *County of Los Angeles,* 141 Cal.App.2d 592, 596 et seq. [297 P.2d 115], *Nichols* v. *Board of Retirement,* 121 Cal.App.2d 176, 180 [262 P.2d 862], and *Shaw* v. *Board of Administration,* 109 Cal.App.2d 770, 774 [241 P.2d 635], indicating that the interpretation of the pro-

visions of retirement acts for public employees is to be governed by the same principles as those applicable to ordinary life insurance is disapproved insofar as it conflicts with the views expressed herein.

The judgment is affirmed.

Shenk, J., Carter, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.