WILMA A. GALLAHER, Plaintiff, Cross-defendant and Appellant, v. STATE TEACHERS' RETIREMENT SYSTEM et al., Defendants, Cross-complainants and Cross-defendants; ELSIE GALLAHER, Cross-defendant, Cross-complainant and Respondent.

Spurr, Brunner & Nelson and W. H. Brunner for Plaintiff, Cross-defendant and Appellant.

No appearance for Defendants, Cross-complainants and Cross-defendants.

Leo M. Cook for Cross-defendant, Cross-complainant and Respondent.

SHOEMAKER, P. J.—This is an appeal by plaintiff and cross-defendant Wilma Gallaher from a judgment granting cross-defendant and cross-complainant Elsie Gallaher a peremptory writ of mandate with respect to certain death benefits under the State Teachers' Retirement System.

The material facts are without dispute. Harold Gallaher became a member of the State Teachers' Retirement System in October 1950, and remained a member until his death on December 26, 1962. In a membership statement executed on October 3, 1950, Harold designated Wilma, who was then his wife, as beneficiary.

During the year 1959, Harold and Wilma resided in Ukiah, California, where Harold was employed as a high school instructor. In June 1959, he separated from Wilma and went to Reno. He informed Wilma that he intended to obtain a divorce in Nevada.

On August 4, 1959, Harold commenced a Nevada divorce action against Wilma. She was served with summons and complaint in California, but never appeared in the Nevada action or submitted to the jurisdiction of the Nevada court. On September 1, 1959, Harold was awarded a default divorce decree in the Nevada action. He returned to Ukiah in September 1959, and he and Elsie went through a ceremonial church wedding on November 25, 1959.

On March 3, 1960, Wilma commenced a California divorce action against Harold, who answered and raised the Nevada divorce decree as a defense. Wilma's complaint contained an allegation, admitted in Harold's answer, that the parties' community property included the "Interest of defendant in retirement fund of approximately $3,000.00." In an interlocutory decree of divorce, the court held the Nevada divorce decree to be void. The California decree provided in relevant part that "all of the property owned by the parties at this time is community property and it is ordered and assigned to the parties to this action as follows: . . . To defendant: . . .

All beneficial interest of defendant in and to the California Teachers' Retirement Fund Deposit and benefits accruing thereunder.'' Harold was also awarded certain ranch property, and Wilma was awarded the Ukiah real property, a prepaid insurance policy and support and maintenance in the amount of $150 per month. The support payments were secured by a lien upon the ranch property which had been awarded to Harold. The decree also provided, ''Should it be necessary or convenient to accomplish the purpose of this judgment for either of the parties to execute or deliver any documents, each is ordered to execute and deliver the same when required by the other, and this Court retains continuing jurisdiction for the purpose of enforcing this portion of this judgment.'' Wilma did not have a final decree entered, so on April 26, 1962, after consulting with Elsie, Harold applied for and obtained a final decree of divorce.

Harold and Elsie lived together and held themselves out as husband and wife from November 25, 1959, until his death. Elsie testified that when the marriage ceremony was performed on November 25, 1959, she had seen the Nevada divorce decree and believed that Harold was free to marry her. When she subsequently learned in March 1960 that Wilma had commenced a California divorce action, she wondered about the validity of her marriage, but Harold told her that Wilma had refused to sign a property settlement agreement and that it was accordingly necessary for the parties' property rights to be adjudicated by a court. She and Harold never discussed going through a second marriage ceremony because they both believed that the Nevada divorce decree was valid. Harold always spoke of the Nevada decree as a divorce and the California decree as a property settlement. Following the entry of the California interlocutory decree, Harold repeatedly assured Elsie that in the event of his death the retirement fund would be hers because the court had made a decision on it. After he had applied for and obtained the final decree, he told Elsie that a final disposition of his and Wilma's community property rights had been effected.

Following Harold's death, a 1942 will naming Wilma as executrix and sole devisee was offered for probate, and Wilma was appointed executrix of Harold's estate.

The trial court made findings in accord with the foregoing factual statement and also found that Harold had at no time filed or attempted to file any written revocation of Wilma's nomination as beneficiary under the retirement system nor

any written nomination of Elsie as beneficiary under such system; that both Wilma and Harold intended the California interlocutory decree of divorce to effectuate an immediate waiver and termination of any and all interest of Wilma in the retirement fund, including her interest as a beneficiary thereof; and that at the time of the entry of such decree, Harold intended that Elsie should be the beneficiary under such retirement system.

The court concluded that Wilma was not the designated beneficiary under the retirement system at the time of Harold's death, since the interlocutory decree had terminated her rights as beneficiary and she was never redesignated beneficiary at any subsequent time; that Elsie was the beneficiary under the retirement system at the time of Harold's death because his intent to make her beneficiary, coupled with his acts of contesting the divorce action brought by Wilma and procuring the final decree, was sufficient to accomplish an effective change of beneficiary.

The court issued a writ of mandate directing the system to pay Elsie all benefits due on account of Harold's death.

■ Wilma first contends that the trial court erred in finding that the interlocutory divorce decree operated as a waiver or termination of her rights as designated beneficiary under the retirement system. She concedes that her community property interest in the retirement fund was eliminated in the decree, and dispensed with any need for Harold to obtain her consent to any change of beneficiary he might thereafter desire to make. However, Wilma denies that the divorce decree effected a present waiver or termination of her expectancy as named beneficiary and asserts that such expectancy became an enforceable right when Harold died without having taken any affirmative step to designate a new beneficiary. This contention must prevail.

The California decisions most closely in point are those dealing with property settlement agreements whereby a husband or wife has agreed to renounce his or her interest under a will or an insurance contract of the other. The rule which has been applied in such cases is that "general expressions or clauses in . . . [property settlement] agreements are not to be construed as including an assignment or renunciation of expectancies and that a beneficiary therefore retains his status under an insurance policy or under a will if it does not clearly appear from the agreement that in addition to

the segregation of the property of the spouses it was intended to deprive either spouse of the right to take property under a will or an insurance contract of the other." (*Grimm* v. *Grimm* (1945) 26 Cal.2d 173 at p. 176 [157 P.2d 841].) The courts have recognized that each case must be decided on its own facts and the particular terms of the agreement involved, and that the effect of a property settlement agreement upon the rights which may accrue to a former spouse on the death of the other is essentially a factual question of the parties' intent as embodied in the agreement. (*Thorp* v. *Randazzo* (1953) 41 Cal.2d 770, 774 [264 P.2d 38]; *Prudential Ins. Co.* v. *Broadhurst* (1958) 157 Cal.App.2d 375, 378 [321 P.2d 75].) However, "Expectancies under a will or an insurance policy may be regarded as waived only when it appears that the attention of the parties was directed to such expectancies and their intention to disclaim future rights which might develop from such expectancies is made clear in their property settlement agreement." (*Thorp* v. *Randazzo, supra,* at p. 776.)

In a number of cases, the courts have held that a former spouse who remained the named beneficiary of an insurance policy or retirement fund at the time of the other's death had effectively renounced such right in a property settlement agreement. In *Sullivan* v. *Union Oil Co. of Cal.* (1940) 16 Cal.2d 229 [105 P.2d 922], the agreement in question purported to settle the rights of the parties "in all respects" and provided that each party waived all rights to the estate of the other and that the property division was in full satisfaction of the wife's right to community property. Both parties were fully aware, when the agreement was executed, that the husband's interest in an "Employees' Provident Fund" was one of their assets. The court held that the agreement effectively terminated the wife's interest in the fund, both as the coowner of the community property and as the named beneficiary of the fund. The same result was reached in *Meherin* v. *Meherin* (1950) 99 Cal.App.2d 596 [222 P.2d 305], *Thorp* v. *Randazzo, supra,* and *First Western Bank & Trust Co.* v. *Omizzolo* (1959) 176 Cal.App.2d 555 [1 Cal.Rptr. 758]. In all of these cases, the property settlement agreements were clearly intended as final and complete settlements of the parties' property rights and both spouses waived any interest in the estate of the other. Moreover, the agreements all contained provisions whereby the spouse named as beneficiary of the other's insurance policy or retirement

fund specifically agreed to relinquish all right, title and interest in such policy or fund.

Where the property settlement agreement does not constitute a comprehensive and final settlement of the parties' property rights, the courts have refused to find a present renunciation of a spouse's beneficial interest in an insurance policy or retirement fund in the absence of language which expressly or by necessary implication so provides. In *Grimm* v. *Grimm, supra,* the property settlement agreement purported to settle only those claims arising or existing by reason of the parties' marital relationship and contained no provision whereby the parties waived their interests in each other's estates. The husband's interest in an insurance policy was specifically mentioned and the agreement provided that such policy was to become his separate property and that he should have the right to change the beneficiary. The wife relinquished all interest in said policy and the premiums and avails thereof, and agreed to execute any documents necessary to accomplish a change of beneficiary. The court held that the wife had given up only her community property rights in such policy and had not renounced her interest as the husband's beneficiary. In *Shaw* v. *Board of Administration* (1952) 109 Cal.App.2d 770 [241 P.2d 635], the parties never entered into a property settlement agreement, but the interlocutory divorce decree awarded the wife $400 in lieu of her interest in the community property. Neither the interlocutory nor final decree made any mention of the husband's interest in a retirement fund. The court held that the divorce decrees clearly did not constitute a renunciation of the wife's beneficial, as opposed to community, interest in the retirement fund.[1] In *Nichols* v. *Board of Retirement* (1953) 121 Cal. App.2d 176 [262 P.2d 862][2], the parties' property settlement agreement made no mention of the husband's interest in an employees' association, but did purport to be a full and final adjustment of their property rights. Although the agreement

---

[1]In *Watenpaugh* v. *State Teachers' Retirement System* (1959) 51 Cal.2d 675, 681-682 [336 P.2d 165], the court disapproved certain language in the *Shaw* case to the effect that retirement acts for public employees are governed by the same rules as ordinary life insurance contracts and that a change of beneficiary may be effected only in strict compliance with the provisions of the Retirement Law. *Nichols* v. *Board of Retirement* (1953) 121 Cal.App.2d 176 [262 P.2d 862], discussed *infra,* was also disapproved.

[2]See footnote 1.

contained no provision whereby the parties waived their rights in each other's estates, they did agree that any earnings and property, real or personal, which either of them might subsequently acquire should be the sole and separate property of that party. The court nevertheless held that the agreement was intended only to separate the property of the spouses and that any general expressions contained therein could not be construed to include an assignment or renunciation of the wife's expectancy as designated beneficiary of the husband. (To the same effect, see *Prudential Ins. Co.* v. *Broadhurst, supra.*)

We are persuaded by the foregoing authorities that the interlocutory divorce decree relied upon in the instant case cannot be held to have effected a present renunciation of Wilma's interest as named beneficiary under the retirement system of which Harold was a member. Such decree, unlike a property settlement agreement, did not purport to accomplish a comprehensive and final settlement of the parties' present and future property rights, and merely undertook to segregate the community assets enumerated in Wilma's complaint. The language of the decree supports no inference that the parties' attention had been directed to Wilma's expectancy as named beneficiary of the retirement fund and provides only that *Harold's* beneficial interest in the retirement fund and benefits accruing thereunder is assigned to him. The language requiring each of the parties to execute or deliver any documents necessary to accomplish the purpose of the decree suggests that no present renunciation of Wilma's interest as beneficiary was intended (*Grimm* v. *Grimm, supra,* at p. 179) and the record contains no extrinsic evidence indicative of such intent on Wilma's part.

Wilma next attacks the court's finding that Harold's intent to designate Elsie as his beneficiary, coupled with his acts of contesting the California divorce action and procuring the final decree, was sufficient to accomplish a change of beneficiary.

Respondent Elsie relies upon *Watenpaugh* .v. *State Teachers' Retirement System* (1959) 51 Cal.2d 675 [336 P.2d 165]; *Wicktor* v. *County of Los Angeles* (1960) 177 Cal.App.2d 390 [2 Cal.Rptr. 352]; and *Lyles* v. *Teachers Retirement Board* (1963) 219 Cal.App.2d 523 [33 Cal.Rptr. 328], as supportive of the judgment entered in her favor. We do not agree that they do so.

In *Watenpaugh,* the decedent, who was a member of the retirement system, was shown to have intended to designate his second wife as beneficiary in place of his former wife and children. In furtherance of such intent, he obtained a blank form for designation of beneficiary, and such form was subsequently filled out, signed, witnessed and placed in the control and possession of his second wife. Although the executed form was never filed with the retirement system prior to the decedent's death, the court adopted the liberal approach applied in certain decisions involving War Risk or National Service Life Insurance issued to men in the military service and held that literal compliance with the provisions of retirement acts for public employees was not necessary to accomplish a change of beneficiary where it was established that there was an intention to change and there was some affirmative action evidencing the exercise of the right to change.

The *Watenpaugh* decision was followed in *Wicktor,* where the evidence similarly established both an intent to effect a change of beneficiary and an affirmative act in furtherance of such intent. In that case, Wicktor, who was a member of the Los Angeles County Employees Retirement System, had originally designated his sister as beneficiary. He subsequently married and informed his wife that he intended to make her his beneficiary and, on a later occasion, that he had completed all arrangements and had filed with the retirement system a designation of her as his beneficiary. Shortly before his death, he showed her a written calculation of the retirement benefits she would receive. There was also evidence, independent of the wife's testimony, that Wicktor had in fact prepared, signed and mailed to the retirement office a card designating his wife as beneficiary. Although the card was apparently lost or misplaced and was never found in the records of the retirement office, the court nevertheless held that a change of beneficiary had been accomplished.

In *Lyles,* the court held that a member of the retirement system had effectively revoked a prior designation of beneficiary by disposing of his account with the retirement fund under a holographic will. Although the court noted that a regulation adopted subsequent to the *Watenpaugh* decision required all revocations or designations of any beneficiary to be received by the system's office prior to the member's death in order to be valid, the court held that such regulation was of no force and effect because it went beyond the law

contained in Education Code, section 14401, and was arbitrary and capricious.

In the instant case, there was ample evidence, in the form of Elsie's testimony, to support the court's finding that Harold intended to designate her as his beneficiary in place of Wilma. However, the record contains no evidence that Harold performed any affirmative act in furtherance of such intent other than to contest the California divorce action and to procure the final decree. The question squarely presented is whether such acts were sufficient to effect a change of beneficiary from Wilma to Elsie.

In an excellent annotation in 2 A.L.R.2d 489, the author discusses the War Risk Insurance cases, upon which the *Watenpaugh* decision was based, and points out that even under the more liberal rule the courts have unanimously held that a mere intention to change the beneficiary, without any acts by which the insured shows his intention is insufficient to effect such change. (2 A.L.R.2d 489 at pp. 498, 510.) The author also expresses the view that the testimony of, or letters written to, the substituted beneficiary is the weakest form of evidence that the insured attempted a change of beneficiary, since such evidence lends itself easily to fraud and the insured may also, for one reason or another, inform such person that he attempted a change of beneficiary when he actually never contemplated any such change. (2 A.L.R.2d 500.)

In the instant case, Harold's acts of contesting the California divorce suit and procuring the final decree are equivocal in and of themselves and are no more readily attributable to an intent to accomplish a change of beneficiary than they are to any of several other diverse motives. Elsie's testimony provides the only evidence that Harold performed these acts for the purpose of effecting a change of beneficiary, and her testimony similarly provides the only evidence that Harold intended her to be his beneficiary.

The cases we have studied in connection with this problem compel us to a determination that courts have uniformly required an affirmative act by the insured primarily because of their understandable reluctance to base decisions solely upon the uncorroborated and self-serving testimony of the substituted beneficiary. The desired result is clearly achieved where the affirmative act of the insured is established by a writing of some kind or by testimony, independent of that

furnished by the substituted beneficiary, that the insured attempted, or at least expressed an intent, to change his beneficiary. Where the only evidence tending to establish the insured's intent *and* the affirmative act performed by him is supplied by the substituted beneficiary, it is apparent that the affirmative act requirement fails to accomplish the intended result and, indeed, serves no useful purpose whatever. The substituted beneficiary of doubtful credibility may as easily testify to both the intent and the affirmative act of the insured as to only one of these requisites. ▮ It would therefore appear that a finding that the insured effected a change of beneficiary ought not to be upheld in the absence of some evidence, independent of the testimony of the substituted beneficiary, which tends to establish that the insured attempted or at least intended to change his beneficiary. Such evidence is clearly lacking in the instant case.

Since Wilma remained the named beneficiary of Harold's interest in the retirement fund at the date of his death, the sole question remaining is whether Elsie is entitled to some portion of such retirement fund by virtue of her status as Harold's putative spouse. The trial court found that on November 25, 1959, when Elsie underwent the ceremonial marriage to Harold, she did so in good faith and in reliance upon the Nevada divorce decree. The court also found that from the date of such marriage until the date of Harold's death, he and Elsie lived together and held themselves out as husband and wife.

Wilma concedes that the court's finding that Elsie entered into the ceremonial marriage in good faith finds support in the evidence. However, Wilma points out that in March 1960 Elsie learned that the California divorce action had been commenced, and on December 20, 1960, an interlocutory divorce decree was entered in such action. Wilma contends that there is no evidentiary support for a finding that Elsie's good faith belief in the validity of her marriage continued beyond March 1960, or beyond December 20, 1960, at the latest.

The parties stipulated at the trial as to the benefits which accrued to Harold's interest in the retirement fund during certain periods. The parties agree that Elsie is entitled to recover one-half the benefits which accrued to Harold's interest in the retirement fund during the period that she was his putative wife, plus interest from the date of his death.

The court did not find as to Elsie's good faith on any date

subsequent to the time of her marriage to Harold. It denied Wilma's request for a counterfinding that in March 1960 Elsie was aware of the pending California divorce action and the possible invalidity of the Nevada divorce decree, and also knew that when the California interlocutory decree was granted, it purported to sever the marital relationship between Harold and Wilma and cast doubt on the validity of her own marriage to Harold. Under such circumstances, we cannot infer that the trial court resolved the issue of Elsie's continuing good faith in her favor. (Code Civ. Proc., § 634; see *Lazzarevich* v. *Lazzarevich* (1948) 88 Cal.App.2d 708, 718-719 [200 P.2d 49].)

In the instant case, the evidence bearing upon Elsie's continuing belief in the legality of her marriage to Harold is not altogether free from conflict. Although Elsie testified that she had always believed and indeed still believed in the validity of the Nevada divorce decree, she admitted that the pendency of the California divorce action caused her to wonder about the legality of her own marriage, and that Harold had referred to such action as casting a shadow upon their marriage. This evidence presented a factual question which should be resolved by the trial court.

For the reasons above stated, the judgment is reversed, with directions to the trial court to determine the duration of Elsie's putative marriage to Harold, and to award such proportion of the death benefits to Wilma and Elsie as may be decided in accordance with this opinion.

Agee, J., and Taylor, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 15, 1965.