BRAY, J.
 
 *
 

 Defendant and cross-complainant Mary J. Hudson (hereinafter Mary) appeals from a judgment in favor of plaintiff and cross-defendant Pearl D. Hudson (hereinafter Pearl) denying Mary’s claim to retirement benefits •arising from the death of Howard Ellsworth Hudson (hereinafter Howard).
 

 Questions Presented
 

 Did certain language in Howard’s will effect a change of beneficiary under the State Employees’ Retirement System?
 

 Record
 

 Pearl filed a petition for writ of mandate to compel defendant State Employees' Retirement System (hereinafter System), to pay her, as the widow of Howard, the retirement benefits provided by the System. Mary filed an answer and cross-complaint claiming that she was the widow of the deceased and entitled to the death benefits. The System depos
 
 *87
 
 ited in court the sum of $6,232.06, the amount due from the retirement fund.
 

 Howard had been employed by the Ukiah High School District as a non-certified employee and was a member of the System from 1957 or 1958 until his death July 31, 1964. In 1932 Howard married Pearl. They lived together until August 1962 when they separated. There were two children bom of the marriage. By a written designation at the time he became a member of the System, Howard designated his said wife as beneficiary, which designation never was changed, unless the terms of his will hereinafter discussed constituted a change of beneficiary.
 

 In December 1962 Howard went to Mexico for three days and obtained a Mexican divorce decree. This was obtained without any appearance by Pearl and without her consent. There was no other divorce proceeding between Howard and Pearl. He continued to support Pearl and their minor daughter (the other child, a son, had reached majority) until his death, paying Pearl $200 per month and the taxes and insurance on the family home. On March 2, 1963, Howard went through a marriage ceremony with Mary in Nevada.
 
 [1]
 

 The Effect of Howard’s Will
 

 Howard was evidently trying to please both of his women, for there was testimony that he promised each that on his death she would get his retirement benefits. As late as April 28, 1964, over two years after he had purportedly married Mary and approximately one year and eight months after he made the will hereinafter discussed, he wrote Pearl . . I’ll take care of you financially as best I can, while alive, and leave my insurance and
 
 retirement
 
 to you when I’m dead.” (Italics added.) On the other hand, Mary testified that he promised that he would change the beneficiary of the retirement fund to her so as to provide for her and the baby which Mary was then carrying. He told three teachers that when the expected baby should be born he would designate the baby as the beneficiary of the retirement fund.
 

 Retirement benefits for state employees are wholly statutory, and membership in the retirement system is compulsory.
 
 (Lyles
 
 v.
 
 Teachers Retirement Board,
 
 219 Cal.
 
 *88
 
 App.2d 523, 526 [33 Cal.Rptr. 328];
 
 Watenpaugh
 
 v.
 
 State Teachers’ Retirement System,
 
 51 Cal.2d 675, 681 [336 P.2d 165].) Although the statutes (Gov. Code, §§ 21204, 21205) set forth the method of changing or designating the beneficiary of the System benefits, all of the technical requirements need not be followed, i.e., filing a written notice with the retirement board, specifying the change of beneficiary from the original beneficiary to a subsequent beneficiary.
 
 [2]
 

 (Lyles
 
 v.
 
 Teachers’ Retirement Board, supra,
 
 523, 529-530;
 
 Watenpaugh
 
 v.
 
 State Teachers’ Retirement System, supra,
 
 51 Cal.2d 675, 681;
 
 Gallaher
 
 v
 
 State Teachers’ Retirement System,
 
 237 Cal.App.2d 510, 517-518 [47 Cal.Rptr. 139];
 
 Wicktor
 
 v.
 
 County of Los Angeles,
 
 177 Cal.App.2d 390, 397 [2 Cal.Rptr. 352].)
 

 “The purpose of the provisions requiring the filing of a change of beneficiary is largely to protect the retirement system against the possibility of being called upon to pay twice. A second purpose, no doubt, is to provide a method of ascertaining the desire and intent of the member with reference to the payment of death benefits. The statute should be construed to give effect
 
 to an executed designation when there is a clear manifestation of intent
 
 by the member to make the change and the designation is filed promptly after death so as to prevent any prejudice to the retirement system.”
 
 (Watenpaugh
 
 v.
 
 State Teachers’ Retirement System, supra,
 
 at p.
 
 681;
 
 italics added.)
 

 In
 
 Lyles,
 
 the court drew an analogy between one of the state retirement systems (teachers) and a tentative or Totten trust. The court pointed out that except for the requirements that the contributions of the employee are compulsory until termination or retirement, the employee has all the other benefits of the tentative trust; namely, the ability (1) to withdraw such contribution upon resignation as a state employee and (2) to designate a beneficiary and change that beneficiary at any time or without a beneficiary, to have the funds payable to the state employee’s estate.
 

 The court goes on to state: '
 
 ‘
 
 The right to revoke a beneficiary under such type of trust is discussed in 1 Scott on Trusts (2d ed.) section 58.4, page 493, where the text states: ‘A revocable trust of a savings deposit can be revoked by the depositor by his will. The trust is revoked not only where the
 
 *89
 
 depositor expressly disposes of the deposit in his will in favor of a person other than the beneficiary, bnt also where the dispositions made in his will would be ineffective if the trust were not revoked. On the other hand,
 
 the trust is not revoked by a bequest of the residue of the depositor’s estate.’ ” (Lyles
 
 v.
 
 Teachers’ Retirement Board, supra,
 
 at pp. 526-527; italics added; accord:
 
 In re Ryan’s Will,
 
 52 N. Y. S. 2d 502, 508.)
 

 Thus, it is the law that to effect a change of beneficiary of a retirement fund there must be a clear manifestation in writing of intent of the member to make such change. In this ease, the most that can be said upon the subject is that the evidence might support a finding that Howard
 
 orally
 
 stated that he intended to change the beneficiary after the baby was born, although the letter Howard wrote Pearl in April 1964 would indicate no such intention. This alone is not enough to effect a change of beneficiary.
 

 We now look at the terms of the will which Mary contends constituted a written change of beneficiary. The will provides in pertinent part: “1. I declare that I am married to Mary J. Hudson, formerly Mary J. Posey; I was previously married to Pearl Hudson; I have two children, Larry Hudson, aged thirty and Gwendolyn Hudson, aged ten. I own in joint tenancy with my first wife, Pearl Hudson, property and a residence situated at Route 1, Box 402-B, Redwood Valley, California which will pass to her by virtue of the said joint tenancy holding. I also have three insurance policies on my life, Mutual of New York for $2,000.00, Metropolitan Life Insurance Company for $1,000.00, and Metropolitan Life Insurance Company for $2,000.00, in which my said first Avife is the beneficiary.
 
 I make no testamentary disposition for my said first wife other than the joint tenancy property and insurance policies herein cited.
 
 (Italics added.)
 

 “2. I
 
 have an estate loan in the Mendocino Lake Schools Credit Union in favor of my daughter Gwendolyn Hudson in the sum of $1,000.00. I make no other or further testamentary disposition in her behalf; I make no testamentary disposition in favor of my son, Larry Hudson.
 
 All the rest, residue and remainder of my property of whatsoever nature and wherever situated, I give, devise and bequeath to my wife MARY J. HUDSON:
 
 I have also created in her behalf an estate loan from tite Credit Union of, Mendocino Lake Schools in her favor in the sum of $4,000.00 and another in the Central .Credit Union of California. ” (Italics added.)
 

 
 *90
 
 In
 
 Watenpaugh
 
 v.
 
 State Teachers’ Retirement System, supra,
 
 675, 681, where the fund owner executed a form for change of beneficiary and placed it in the possession and under the control of the new beneficiary, it was held that such writing was effective to change the beneficiary. There the court adopted the approach of the federal courts as applied to War Risk and National Service Life Insurance cases that strict conformity with rules is not required to change the beneficiary as long as there existed an intent to change
 
 and some positive action
 
 taken to effectuate that intent.
 

 In
 
 Wickter
 
 v.
 
 County of Los Angeles, supra,
 
 390, on conflicting evidence the court found that the card designating the change of beneficiary had been signed and mailed to the agency but apparently lost. This was held to effectuate the change. Obviously in these two eases, different from the one at bench, there was clear evidence in writing of a change of beneficiary. In
 
 Lyles
 
 v.
 
 Teachers’ Retirement Board, supra,
 
 219 Cal.App.2d 523, 525, the teacher in her will stated: ‘ ‘ ‘ First—regarding money. My estate should consist of a sum in California Teachers Retirement, about $6000.00. And a smaller sum in Credit Union. ’ ” The will then set forth a number of specific money bequests and provided “ ‘The balance of cash money to be divided equally into 6 parts: . . . .’ ” (at p. 525) specifying the persons to receive these parts. The court held that the will effectively changed the beneficiary of the retirement fund. Here there was clear evidence in writing of a change of beneficiary, in that the teacher in her will expressly disposed of the very moneys which would be due from the retirement fund, which was not possible without a change of beneficiary.
 

 In
 
 Gallaher
 
 v.
 
 State Teachers’ Retirement System, supra,
 
 237 Cal.App.2d 510 there was a situation somewhat similar to that in the ease at bench involving a teacher at the Ukiah High School where Howard was an employee. The teacher was a member of the same System and had designated his wife, Wilma, as the beneficiary of the fund. In 1959 he obtained a Nevada divorce and then entered into a marriage ceremony with Elsie. Wilma then commenced a divorce action against the teacher in California, in which action the court held the Nevada divorce invalid and granted Wilma a decree of divorce. It awarded to the defendant husband “ ‘All beneficial interest of defendant in and to the California Teachers’ Retirement Fund Deposit and benefits accruing thereunder. ’ ” (At p. 512.) Elsie and her putative husband lived together thereafter until his death some two years thereafter.
 
 *91
 
 He left a will in which Elsie was the sole devisee. The evidence showed that he always regarded the divorce decree awarding him the retirement fund as being a property settlement and assured Elsie that on his death she would receive it “because the court had made a decision on it.” (At p. 512.) Wilma sought a judgment that she was entitled to the putative husband’s interest in the retirement fund on the ground that the award of it to the husband in the divorce decree constituted a change of beneficiary. The court held, however, that the divorce decree did not effect a present renunciation of Wilma’s interest as named beneficiary under the retirement system. “Such decree . . . did not purport to accomplish a comprehensive and final settlement of the parties’ present and future property rights, and merely undertook to segregate the community assets enumerated in Wilma’s complaint.” (At p. 516.) The court referred to an annotation in 2 A.L.R.2d 489 where “the author discusses the War Risk Insurance eases, upon which the
 
 Watenpaugh
 
 decision was based, and points out that even under the more liberal rule the courts have unanimously held that a mere intention to change the beneficiary, without any acts by which the insured shows his intention is insufficient to effect such change.” (At p. 518.)
 

 The finding of the trial court that Howard, despite his statements of intention concerning the wife and the unborn child, did nothing to change the beneficiary is well supported. Incidentally, those statements were made long after he executed the will which Mary contends effected a change of beneficiary and, at best, referred to his intention to make a change. At no time did he ever state that he had changed the beneficiary. Thus, the terms of the will could not possibly constitute the required clear and convincing proof of the nomination of “a different beneficiary designated by a writing.”
 

 In re Beck’s Estate,
 
 260 App. Div. 651 [23 N.Y.S.2d 525]. cited by Mary, involved a Totten trust set up by the decedent in her lifetime for the benefit of her sister. Later the settlor by her will provided that the sister was to receive $5 only, with the rest and residue to a third partjr. There the court held that by so providing, the settlor effectively revoked the trust and the beneficiary took the trust corpus under the residuary clause. In that case the sole estate the decedent had to leave was the assets of the trust, and hence, no other construction could be placed upon the will than that the decedent intended by the will to revoke the previous designation of
 
 *92
 
 beneficiary. The will could not operate without such interpretation. In the instant case, Howard had estate to leave Mary by the residuary clause, and hence, the will could operate without considering the retirement fund.
 

 Mary misconstrues the effect of Howard’s letter of April 24, 1964, to Pearl as she contends that it was merely an expression of intent to change in the future the terms of the will. On the contrary, the letter is evidence that Howard by his will had not intended to change Pearl’s status as beneficiary of the retirement fund.
 

 The judgment is affirmed.
 

 Draper, P. J., and Salsman, J., concurred.
 

 *
 

 RetirecL Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.
 

 [1]
 

 Mary had obtained a California divorce from another man and, although she knew that Howard was in Mexico only a few days, she did not consult an attorney concerning the validity of Howard’s Mexican divorce decree. A child was horn to Howard and Mary 12 days after Howard’s death.
 

 [2]
 

 Section 21205 of the Government Code provides that nomination of a beneficiary “may be revoked at the pleasure of the person who made it and a different beneficiary designated by a writing filed with the board. ’
 
 ’