The MANHATTAN LIFE INSURANCE COMPANY, a New York Corporation, Plaintiff,

v.

Margaret Ann BARNES, Defendant-Appellee,

Margaret Ann Smith and Victoria L. Bakke, formerly known as Victoria L. Barnes, Defendants-Appellants,

Barbara J. Thompson, formerly known as Barbara J. Barnes, and Margaret Ann Smith, as Administratrix of the Estate of Victor H. Barnes, deceased, Defendants.

Margaret Ann BARNES, Cross-Claimant-Appellee,

v.

The MANHATTAN LIFE INSURANCE COMPANY, Cross-Defendant,

Margaret Ann Smith and Victoria L. Bakke, Cross-Defendants-Appellants,

Barbara Jean Thompson, Cross-Defendant.

No. 25495.

United States Court of Appeals, Ninth Circuit.

June 19, 1972.

Wade H. Hover (argued) San Jose, Cal., William S. Love, of Hardy, Carley,

Love & Jaffe, Palo Alto, Cal., Eleanor M. Kraft, of Kraft & Kraft, San Jose, Cal., for appellant.

Jay B. Pendleton (argued), of Hubbell, Pendleton & Cook, San Jose, Cal., Thacher, Jones, Casey & Ball, San Francisco Cal., Wilson, Mosher & Martin, Palo Alto, Cal., for appellee.

Before CHOY and GOODWIN, Circuit Judges, and PREGERSON, District Judge *.

PREGERSON, District Judge:

The Manhattan Life Insurance Company [hereinafter "Manhattan"] brought this action in interpleader on March 11, 1968, pursuant to 28 U.S.C. § 1335, to determine the beneficiary of group life insurance policy # 1878 GL. Manhattan had issued the policy on April 14, 1960, on the life of one Victor H. Barnes. Barnes had died on December 22, 1967. In its complaint Manhattan admitted liability in the amount of $55,000 plus interest at the rate of 3.5% from the time of the insured's death. It paid that sum into the registry of the court below and asked that court to restrain defendants from instituting other actions to recover any part of the proceeds of the policy, to require defendants to interplead so that the beneficiary could be determined, and to discharge it from any additional liability in connection with the policy.

The complaint named five defendants: Margaret Ann Barnes, Mr. Barnes's former wife, who was named as beneficiary on Manhattan's records at the time of Mr. Barnes's death; Mr. Barnes's three daughters, Margaret Ann Smith, Victoria L. Bakke, and Barbara J. Thompson; and Mr. Barnes's estate, the administratrix of which was Mrs. Smith. On May 27, 1968, after the defendants had answered Manhattan's complaint,[1] the court below dismissed Manhattan, discharging it from any additional liability in connection with the policy and restraining the defendants from instituting other suits against it in order to collect proceeds of the policy. On August 2, 1968, Mr. Barnes's estate was voluntarily dismissed. Mrs. Barnes filed a motion for summary judgment on October 9, 1969, and the court below granted the motion on January 22, 1970. Mrs. Smith and Mrs. Bakke have appealed from the judgment entered below.

Section VI of the policy provided, in part,

"The Beneficiary for the Individual shall be the person or persons designated on the insurance records maintained in accordance with the Group Policy and the Beneficiary shall be in accordance with the Individual's selection. The Individual may change his Beneficiary at any time upon satisfactory written request."

Mrs. Smith and Mrs. Bakke concede that at the time of Mr. Barnes's death, Mrs. Barnes was the beneficiary designated on Manhattan's records in accordance with Section VI of the policy. They contend, however, that on February 21, 1966, twenty-two months before his death, Mr. Barnes executed a form in which he requested a change of beneficiary and named his three daughters as the new beneficiaries of the policy in question. Mrs. Smith allegedly found the change of beneficiary request card among some of her father's papers thirty-two days after his death. Along with the request card she also allegedly found a note, written in the hand of one of her father's employees, which read, "Change Manhattan, beneficiary of Manhattan policy." The daughters also submitted depositions that indicated that their father had believed that he had changed the beneficiary of the policy. This evidence was contradicted, however, by evidence offered by Mrs. Barnes.

The parties agree that California law governs this case; they disagree as to what that law is. Mrs. Smith and Mrs.

* Honorable Harry Pregerson, United States District Judge for the Central District of California, sitting by designation.

1. Mrs. Barnes also filed a cross-claim againt the other defendants and against Manhattan.

Bakke argue that the formal requirements for changing a beneficiary that are specified in the insurance policy—*i. e.*, written notice on a prescribed form—serve only to protect the insurer. They contend, therefore, that if the insurer institutes an action in interpleader, it waives its right to insist on compliance with these formalities, because after the insurer pays the funds that are the subject of the dispute into the registry of the court, the court will shield it from any additional liability. Since no other party has a right to invoke these formalities, the daughters conclude, a court of equity must determine whether or not the insured intended to change the beneficiary, and it must give effect to that intent. In this case, of course, there is considerable dispute over what Mr. Barnes's intent actually was. It is clear, therefore, that if Mrs. Smith and Mrs. Bakke accurately state the applicable law, material issues of fact remain unresolved, the summary judgment entered below was inappropriate, and the case should go to trial.

■■ The California case law is not entirely free from ambiguity. Nevertheless, the Supreme Court of California has laid down the applicable rules of law in Pimentel v. Conselho Supremo, 6 Cal. 2d 182, 57 P.2d 131 (1936). The Supreme Court stated in its decision,

> "While there is a division of authority on the question of whether interpleader and payment into court operates as a waiver of the insured's failure to comply with the policy provisions concerning change of beneficiary, *it is settled in this jurisdiction that it does not.* * * * Appellant concedes this to be the present rule in this state, but argues that it is against the weight of authority and

asks that the cases so holding be overruled. We are satisfied that the better reasoning supports the rule adopted by our courts * * *. Nor are we convinced that the rules requiring certain formalities for the change of beneficiaries are solely for the benefit of the insurer and are not in any degree intended to protect the insured and the original beneficiary." 57 P. 2d 132–133. [Emphasis added.]

The Supreme Court pointed out that the earlier decisions had recognized three exceptions to the general rule requiring strict compliance with the prescribed procedures. Two of those exceptions are not relevant to this case, but the third one is relevant: if an insured has pursued the prescribed course of action and has done all in his power to change the beneficiary, but has died before the formal procedures could be complied with in their entirety, a court of equity will treat the change of beneficiary as having been made.[2] *See, e. g.*, McLaughlin v. McLaughlin, 104 Cal. 171, 37 P. 865 (1894); Supreme Lodge v. Price, 27 Cal.App. 607, 150 P. 803 (1915); Barbozo v. Conselho Supremo, 43 Cal.App. 775, 185 P. 1028 (1919); Johnston v. Kearns, 107 Cal.App. 557, 290 P. 640 (1930). The Supreme Court pointed out, however, that this exception

> "has been variously interpreted as meaning all that is required of the insured, leaving only ministerial duties to be performed by the insurer * * * or as all that it was possible for the insured to do under the circumstances under which he attempted to make the change." 57 P.2d at 134.

The Supreme Court resolved this conflict by concluding,

> "We think that where the insurer is not contesting the change the rule is not to be applied rigorously and where

---

2. The other two exceptions are as follows: (1) If the insurer has waived strict compliance with its own rules by issuing a new certificate pursuant to a request by the insured, a court of equity will treat the change of beneficiary as complete; (2) if it was beyond the power

of the insured to comply literally with the requirements—if, for example, he was unable to gain access to the policy itself or to prescribed forms—a court of equity will also treat the change as having been made. *See, e. g.*, Pimentel v. Conselho Supremo, *supra*, 57 P.2d at 133.

the insured makes every reasonable effort under the circumstances, complying as far as he is able with the rules, and there is a clear manifestation of intent to make the change, which the insured has put into execution as best he can, equity should regard the change as effected." 57 P.2d at 134.

Institution of an action in interpleader, in short, does not waive compliance with the prescribed procedures. It merely relaxes the requirements, and a court of equity may give effect to an intended change if "the insured [made] every reasonable effort under the circumstances, complying as far as he [was] able with the rules," and if there has been "a clear manifestation of intent to make the change."

Mrs. Smith and Mrs. Bakke cite a more recent decision by the California District Court of Appeal in support of their contention that California law regards the institution of an action in interpleader as a waiver of strict compliance with contractual requirements. In Saunders v. Stevers, 221 Cal.App.2d 539, 34 Cal.Rptr. 579 (1963), the court stated,

"Where, as here, the company makes no contest but interpleads the contesting beneficiaries and pays the proceeds of the policy into court, a liberal rule obtains and courts of equity seek to do that which the insured intended to have done and to award the funds to the claimant who has the strongest claim under the facts of the case." 34 Cal.Rptr. at 581.

The only authority for this statement cited by the court was *Pimentel* and two cases decided by the District Court of Appeal prior to *Pimentel*. Examined in the light of this authority, the statement is ambiguous and may be read in two ways: it either does no more than loosely paraphrase the rule established in *Pimentel,* or it contradicts that rule and, as a result, finds no support in the California Supreme Court decision that purportedly stands as its authority.

The details of the *Saunders* case support the former interpretation. The relevant contractual provision stated,

"The insured shall have the right at any time, and from time to time, to change the beneficiary, by written notice in form acceptable to the Company, which will be furnished on request."

The insured wrote to the insurer, notifying it of her intention to change beneficiaries. The insurer sent her its forms, the insured executed them, at least in part, but they were inadvertently destroyed before she could send them back to the insurer. She requested new forms, and they were sent. The insured died one month later, however, and never executed the second set of forms. The District Court of Appeal held that the beneficiary had been changed. The court did not hold that by instituting an action in interpleader the insurer had waived compliance with the contract. It emphasized, instead, the ambiguity of the contractual provision and reasoned that the institution of the action in interpleader constituted acceptance by the insurer of the insured's initial letter to it as "written notice in form acceptable to the Company." The court also stressed the fact that there was additional evidence of the insured's desire to change the beneficiary, while there was no evidence of any desire not to change the beneficiary. The decision, in short, was not necessarily inconsistent with *Pimentel*. The institution of an action in interpleader relaxed the ordinary rule requiring strict compliance. The insured had made, in the words of *Pimentel,* "every reasonable effort" to change the beneficiary during the time between her decision to make the change and her death. There had been, moreover, a clear manifestation of an intention to change the beneficiary.

Mrs. Smith and Mrs. Bakke also rely on the California Supreme Court's decision in Watenpaugh v. State Teachers' Retirement System, 51 Cal.2d 675, 336 P.2d 165 (1959). The facts of the case

were very similar to those of this case, except that the benefits in question arose under a state employees' retirement program established by state statute. The Supreme Court held that there had been a change of beneficiary, but in doing so, it recognized that ordinary life insurance contracts were governed by different rules of law. It distinguished the case then before it from the cases dealing with ordinary insurance contracts on this very basis:

> "It is true that in ordinary life insurance contracts the general rule is that there must be strict compliance with the method prescribed by the policy for change of beneficiary. See * * * Pimentel v. Conselho Supremo * * *. However, the provisions for death benefits under retirement systems differ in important respects from ordinary life insurance policies. For example, the retirement benefits are completely statutory in origin * * *. The cases dealing with ordinary life insurance contracts are therefore not controlling." 336 F.2d at 169.

■ *Watenpaugh* and *Saunders* do not undermine the applicability of *Pimentel* to this case. California requires at least substantial compliance with the provisions of the insurance contract, even if the insurer has brought an action in interpleader. That requirement protects both the original beneficiary and the expressed intent of the insured from interference based on modest bits of evidence. California demands that substantial steps be taken to actually change a beneficiary before the formal requirements of the contract may be ignored. Therefore in order to receive the proceeds of the insurance policy in question, Mrs. Smith and Mrs. Bakke would have to demonstrate that Mr. Barnes made "every reasonable effort under the circumstances, complying as far as he [was] able with the rules," and that there has been a clear manifestation of his intention to change the beneficiary. The evidence submitted by the daughters shows, at most, that during February 1966 Mr. Barnes executed a change of beneficiary request card and that on one occasion during the next twenty-two months he instructed an employee to change the beneficiary of the policy. There is no evidence that Mr. Barnes was incapacitated in any way during these twenty-two months; all the evidence shows that he continued to conduct his business. Under these circumstances, he could certainly have done more to insure that the contractual requirements were complied with. It cannot be said that he made "every reasonable effort" to change the beneficiary. The insured in *Saunders* twice wrote to the insurer in regard to her desire to change beneficiaries. The insured in *Pimentel* gave instructions for changing beneficiaries from his deathbed, repeatedly asked whether his wishes had been followed, but received mistaken assurances. In Johnston v. Kearns, *supra,* the insured wrote a letter to the insurer while on his deathbed, gave instructions that the letter be mailed, but died before it could be deposited in the mail. The efforts allegedly made by Mr. Barnes do not approach what was done in these cases.[3] Summary judgment for Mrs. Barnes was appropriate, and the district court's decision will be affirmed.

3. Our decision is based on the inadequacy of Mr. Barnes's efforts to change the beneficiary; we have not considered whether or not there has been a "clear manifestation of intent to make the change," within the meaning of *Pimentel.*