[Civ. No. 69284. Second Dist., Div. Four. Feb. 21, 1984.]

MARGARET COUGHLIN, Plaintiff and Respondent, v.
BOARD OF ADMINISTRATION OF THE PUBLIC EMPLOYEES'
RETIREMENT SYSTEM, Defendant and Appellant.

## Counsel

Gerald Ross Adams and Cynthia G. Besemer for Defendant and Appellant.

E. Michael Ambrosi and Ambrosi & Lavoie for Plaintiff and Respondent.

## Opinion

**KINGSLEY, Acting P. J.**—Appellant Board of Administration of the Public Employees' Retirement System appeals from a judgment in favor of plaintiff Margaret Coughlin, upholding Coughlin's claim to death benefits arising from the death of her son, Fred Taylor.

The facts are undisputed: Taylor was a member of the Public Employees' Retirement System (PERS), under which benefits were to be awarded his beneficiaries in the event of his death. On January 11, 1979, after he and his second wife initiated an action for divorce, Taylor filed a notice with PERS, designating his mother, Coughlin, as the beneficiary of his death benefits. On June 13, 1979, the divorce action culminated in a final decree of dissolution. When Taylor subsequently died, PERS determined that the benefits should be paid not to Coughlin, but to the adult children of Taylor's first marriage.

An administrative law judge sustained the PERS determination. However, on Coughlin's petition for writ of mandate, the superior court disagreed and awarded the benefits to Coughlin.

■ The issue is whether, under Government Code section 21205, Taylor's divorce automatically revoked the designation of beneficiary which he filed after initiation—but before finalization—of the divorce. We hold that, when a PERS member files a designation of beneficiary after initiation of divorce proceedings, a subsequent entry of final judgment of dissolution does not revoke the designation.

Government Code section 21205 provides in pertinent part: "[A] designation of beneficiary under [the PERS] is revocable at the pleasure of the member who made it. A member's marriage, dissolution of marriage, annulment of his marriage, the birth of his child, or his adoption of a child shall constitute an automatic revocation of his previous revocable designation of beneficiary. . . . [¶] Upon revocation of any beneficiary designation, a member may designate the same or another beneficiary by a writing filed with the board."

Section 21211 provides in pertinent part: "If no beneficiary designation is in effect on the date of death, any benefit payable shall be paid to the survivors of the member in the following order: [¶] 1. The member's spouse [;] [¶] 2. His children [;] [¶] 3. His parents."

In the instant case, Taylor's marriage dissolved after he designated his mother as his beneficiary, and he then died with no surviving spouse. Were we to strictly apply the terms of sections 21205 and 21211 to this situation, we would hold that his death benefits must go to his children regardless of his clear manifestation of a contrary intent. For the following reasons however, we agree with the trial court that a strict application of the statutes would be inappropriate in the situation before us.

In *Watenpaugh* v. *State Teachers' Retirement* (1959) 51 Cal.2d 675 [336 P.2d 165], our Supreme Court interpreted the death benefits provisions of Education Code sections 14575 and 14661 (since repealed). These sections, like Government Code section 21205, allowed public employees to designate beneficiaries of their own choosing only by a written instrument duly executed "and filed with the [retirement system] board." (Ed. Code, [former] §§ 14575, 14661.) In *Watenpaugh* the employee executed a designation of beneficiary, but failed to file it before his death. The court awarded the benefits to the beneficiary named in the designation, holding that public employee pension legislation must be liberally construed to effectuate the employee's intent as to whom his beneficiary should be. Specifically, the court held that, where an employee substantially complies with statutory filing provisions by executing a change of beneficiary form and demonstrating the intent that it be filed, his intent will not be subverted by his failure to actually file the form.

Subsequently, the *Watenpaugh* rule of liberal construction to excuse strict compliance with filing provisions was applied to county employee pension legislation. (Gov. Code, §§ 31765.1, 31780; *Wicktor* v. *County of Los Angeles* (1960) 177 Cal.App.2d 390 [2 Cal.Rptr. 352].) In *Wicktor,* the court held that *Watenpaugh* mandated the awarding of an employee's death benefits to the beneficiary whom he had named in a writing which probably had been mailed to, but not filed with, the retirement board.

In the instant case, Taylor, after filing for divorce, manifested his intent to have his death benefits go to his mother by executing a designation of beneficiary and filing it with the retirement board. His one mistake was that he was *too* well organized in arranging his affairs to respond to the change in circumstances represented by his impending divorce: rather than waiting six months for the issuance of the piece of paper that would officialize the demise of his already defunct marriage, he changed his beneficiary designation immediately upon embarking on the divorce proceedings. Had he procrastinated, his mother would clearly be entitled to receive his benefits in accordance with his intent. The question is whether his intent must be subverted simply because he filed too soon.

It has been held that a major purpose of the 1970 Legislature in enacting Government Code sections 21205 and 21211 was to award an employee's death benefits to those persons whom the employee would most likely intend to be his beneficiaries. The statutes anticipate that, upon undergoing a fundamental change in family composition such as marriage, divorce or birth of a child, employees would most likely intend to provide for their new family members, and/or revoke prior provisions made for their ex-spouses. The statutes also anticipate that employees themselves will often fail to so provide and revoke, not out of conscious intent, but simply from a lack of attentiveness. By automatically revoking prior beneficiary-designations upon a change in family composition, and by substituting statutory beneficiaries in their place, sections 21205 and 21211 are designed to protect employees from such inattentiveness. "[W]e must assume that the Legislature found a benefit to the employee, not only by helping him to meet an obligation which he might otherwise have overlooked, but also by comporting with what he would most likely have desired had he been attentive." (*Ruster* v. *Ruster* (1974) 40 Cal.App.3d 379, 383 [114 Cal.Rptr. 812]; accord, *Kerlin* v. *Board of Administration* (1979) 90 Cal.App.3d 317 [153 Cal.Rptr. 257].)

Prior to the repeal of former section 21205 and the enactment of present sections 21205 and 21211, the PERS had no automatic revocation provision. Thus, when an employee divorced and remarried without thinking to change his beneficiary designation from the old to the new spouse, the ex-spouse

received his death benefits in spite of a likely intent to the contrary. (See, e.g., *Hudson* v. *Posey* (1967) 255 Cal.App.2d 89 [62 Cal.Rptr. 803].) As was recognized in *Ruster* and *Kerlin,* the 1970 enactments were designed in part to avoid such a result and to effectuate instead the employee's likely intent. We think it would be highly ironic to interpret these enactments to mandate the kind of result which they were designed to avoid. Under *Watenpaugh* and *Wictor,* we need not do so.

PERS, however, argues that sections 21205 and 21211 must be strictly applied in the present case (and in all cases) because another purpose of the enactments was to provide certainty in the identity of beneficiaries. PERS refers to language in *Ruster, supra,* which, although not discussing whether the enactments should be strictly or liberally construed, does indicate a legislative quest for more certainty. (40 Cal.App.3d 379, 382.) According to PERS' argument, the enactments were designed to avoid judicial inquiries into the intent of employees upon changes in their family composition, and to rely instead on the certain beneficiary designations provided in section 21211. PERS contends that the legislative desire for certainty will be subverted if we hold employees to anything less than strict compliance with the section 21205 filing provisions. In other words, *Watenpaugh* is incompatible with the present statutory scheme.

We disagree, because we find that the statutory scheme enacted in 1970 is no more certain than former section 21205 which it replaced; hence there is no basis to suspect that the 1970 Legislature meant to preclude the application of *Watenpaugh* principles to the PERS. Under the pre-1970 and post-1970 statutory schemes, the identity of beneficiary upon an employee's marriage, divorce or other change in family composition are equally certain. Under the old scheme, the beneficiary was the person last designated as such by the employee, regardless of any subsequent change in family circumstances. (Former § 21205, repealed in 1970.) Under the present scheme, the beneficiary is the person last designated as such by the employee *absent* a subsequent change in family circumstances; upon any of the enumerated changes, the beneficiary is identifiable by referring to section 21211 until and unless the employee designates a different beneficiary himself. Although the *Ruster* court hints otherwise, we think it apparent that neither of these schemes provides more certainty in the identification of beneficiary than the other. The only real difference between them is that the present scheme identifies as beneficiaries those persons whom an attentive employee would likely designate himself. We find nothing in the 1970 enactments to indicate that the Legislature meant to avoid the uncertainties inherent in the *Watenpaugh* mandate of liberal construction of pension legislation to effectuate employee intent.

In the instant case, by designating Coughlin as his new PERS beneficiary *after* initiating divorce proceedings, Taylor manifested a clear intention to name a beneficiary of his own choosing in response to his change in family composition, in lieu of allowing the automatic provisions of sections 21205 and 21211 to select a different beneficiary for him. We think his situation is entirely analogous to that in *Watenpaugh* and *Wicktor,* where the employees' intents were clear, they substantially complied with the filing provisions, and their only fault was to fail to actually file the designations they had executed. Here, Taylor's fault was more trivial: rather than failing to file his designation, he filed it a bit too precipitously. The nature of the fault itself shows that there can be no mistaking his intent to provide for Coughlin in response to the divorce. Under these circumstances, *Watenpaugh* mandates that his designation of Coughlin be given effect.

Finally, we note that no prejudice to PERS will be suffered by this result. Coughlin disputed the initial PERS determination before any benefits were paid out. Thus PERS was not placed in the position of having to pay twice, a position which, PERS contends and we agree, should be avoided.

The judgment is affirmed.

McClosky, J., and Amerian, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 18, 1984.