[Civ. No. 36046. Second Dist., Div. Five. July 8, 1970.]

JOSEPHINE VARGAS, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
MILDRED VARGAS, Real Party in Interest.

## COUNSEL

Ervin M. Roeder and Barry T. Harlan for Petitioner.

No appearance for Respondent.

E. Michael Kruse for Real Party in Interest.

## OPINION

**SELBER, J.**[*] — Juan Abel Vargas, Jr., died intestate on July 13, 1969, in the County of Los Angeles, leaving an estate within this country.

On July 17, 1969, petitioner Josephine P. Vargas, as the surviving widow of the decedent, filed her petition for letters of administration.

On July 25, 1969, a petition for letters of administration was filed by Samuel A. Moglin, as nominee of Mildred S. Vargas, who also claimed to be the surviving widow of the decedent.

The two petitions were consolidated for hearing, and on September 15, 1969, testimonial and documentary evidence on behalf of each petitioner was heard by the court. The matter was submitted upon the filing of briefs and written argument by the respective counsel. Thereafter, in a memorandum of opinion of December 17, 1969, respondent court granted the petition of Samuel A. Moglin and denied that of Josephine P. Vargas, based on its finding that Mildred S. Vargas was the lawful wife of the decedent at the time of his death. On January 9, 1970, an order was filed appointing Samuel A. Moglin, nominee of Mildred S. Vargas, administrator of the estate and letters of administration were issued to him on January 13, 1970.

By the within petition, petitioner Josephine Vargas seeks a writ of mandate commanding the respondent court to vacate its prior order and to issue letters of administration to her.

The facts are interesting and for the most part undisputed. Mildred was married to the decedent on August 10, 1929, and until the time of his death she considered herself to be the sole spouse of the decedent; Josephine married the decedent on May 24, 1945, and although separated from him after about three years of marriage, she also considered herself to be the sole spouse of decedent. For a period of more than 24 years decedent had

[*]Assigned by the Chairman of the Judicial Council.

led a double life, during which time he maintained two separate households in the City of Los Angeles and fathered and supported two separate families, each of which was unknown to the other until shortly after decedent's death. The trial court found that both spouses were equally innocent, and there is nothing in the record of the proceedings to suggest otherwise.

The decedent was a successful custom house broker and freight forwarder, and from the size of his estate it appears he was well able to support these two families as he did. He was required by his business to travel frequently to Mexico, South America, New York and San Francisco and he maintained a business office in Lima, Peru in addition to his Los Angeles office. When in Los Angeles, the decedent established a pattern for his relationships with his two families. He would have dinner at the home of Josephine five or six nights a week, generally between the hours of six to seven p.m. Thereafter he would go to Mildred's where he would spend the rest of the evening, retire, and leave for work at about 6:30 a.m. Each wife testified that decedent was a good provider and that he paid all the bills for the family's upkeep. Each one also testified that he filed joint income tax returns every year in which he listed her as his wife. He gave gifts regularly to each of his children and at various times took each of his families on vacation trips.

Josephine testified that she knew decedent had been married prior to his ceremony with her; that she had asked him if he had obtained a divorce and he had assured her that he had. On the other hand, Mildred testified that in 1945 the decedent had told her that he had had an affair with a woman whose name was Josephine and that Josephine was bearing his child; that she had asked decedent if he wished a divorce and that he had begged her not to divorce him; that she had never divorced decedent nor received any divorce documents from him. Indeed there is no evidence that either of these marriages had ever been terminated by any action of either the decedent or his wives. It is upon this state of the evidence that both Mildred and Josephine claim to be the surviving spouse of Juan Vargas, Jr., and, as such, entitled to letters of administration to themselves, or in the case of Mildred, to her nominee, Samuel A. Moglin.

■ The following well established rules of law are not questioned: When a person has entered into two successive marriages, a presumption arises in favor of the validity of the second marriage (See Evid. Code, § 663), and the burden is upon the party attacking the validity of the second marriage to prove that the first marriage had not been dissolved by the death of a spouse or by divorce or had not been annulled at the time of the second marriage. (Evid. Code, §§ 604, 605; *Estate of Smith* (1949) 33 Cal.2d 279, 281 [201 P.2d 539]; *Estate of Hughson* (1916)

173 Cal. 448, 451 [160 P. 548]; *Hamburgh* v. *Hys* (1937) 22 Cal.App.2d 508, 509 [71 P.2d 301]; *Hunter* v. *Hunter* (1896) 111 Cal. 261 [43 P. 756].)

It is petitioner's contention that in order to sustain her burden, Mildred had to produce evidence that decedent had not been granted a divorce in any of the jurisdictions in which he resided prior to the second marriage and that she had not done so. Reliance is placed upon the following under-scored language in *Estate of Goldberg,* 203 Cal.App.2d 402, 406 [21 Cal.Rptr. 626]: "The presumption of valid marriage is a rebuttable one. . . . The burden of overcoming the presumption is on appellants. In order to successfully attack a second marriage the party seeking to overcome it must show the former marriage *and must prove the negative fact that no divorce was obtained prior to the second marriage in any place in which one of the parties to the second marriage may have resided with his former spouse. (Hunter* v. *Hunter* (1896) 111 Cal. 261 [43 P. 756, 52 Am.St.Rep. 180, 31 L.R.A. 411]; *Estate of Borneman* (1939) 35 Cal.App.2d 455 [96 P.2d 182]; *Hamburgh* v. *Hys* (1937) 22 Cal.App.2d 508 [71 P.2d 301].) This is an extremely heavy burden, but the presumption in favor of the validity of a subsequent marriage is based on solid, strong public policy; hence it gives rise to the derivative presumption that the prior marriage was dissolved by divorce or death. It is actually this derivative presumption which must be overcome." (Italics added.)

In *Bancroft* v. *Bancroft* (1935) 9 Cal.App.2d 464 [50 P.2d 465], also relied upon by petitioner, the court sets forth a comprehensive discussion of successive ceremonial marriages and after stating the rule as to the pre-sumption and citing many authorities therefore, states at pages 469-470: "These cases hold that it is not sufficient for the party asserting the validity of the first marriage to prove that she had not obtained a divorce and had not been served with process in a divorce action brought by her husband. In order to overcome the presumption she must not only prove those facts *but must prove that her husband was not granted a divorce in any of the jurisdictions in which he resided prior to the second marriage."* (Italics added.)

Thus, the sole question presented by this petition is whether Mildred by reason of her burden to prove the negative fact that no divorce was obtained must show that she has searched the records of the various juris-dictions in which decedent may have resided since his marriage to her and prior to his marriage to Josephine.[1]

---

[1]Petitioner states that Mildred and decedent lived in Lima, Peru, San Francisco and Los Angeles County. Other than showing that they resided in Los Angeles County, the evidence does not support this statement. Although, decedent frequently

Mildred concedes that this was not done in the present case, but contends that the presumption of the validity of the second marriage may be overcome by any proper evidence and that the respondent court had before it ample evidence to support the finding that Mildred was the legal surviving spouse. Mildred further contends that in all of the cases cited by petitioner the courts discussed "a search of the record as the only clear and convincing proof that the proponent of the first marriage can offer in view of the fact that the parties of the first marriage had been separated for considerable times and distances," whereas, in the present case, there was evidence that Mildred and the decedent lived together continuously as husband and wife for 40 years until the time of decedent's death.

Respondent court, in its memorandum of opinion, states:

"It appears that the presumption supporting the second ceremonial marriage is based upon the well-known general presumption of the law to the effect that a person is free from wrong or guilt until the contrary is affirmatively shown. The presumption operates reasonably enough in situations where two separate marriages have occurred, where the parties to the first marriage have been separated, and a substantial period of time has elapsed between the two ceremonies (as in the case at bar) to warrant a belief on the part of the trier-of-fact that a lawful divorce probably has occurred, at some time and in some place, which severed the original marriage bond, and left the man or woman in question free to enter into the second marriage.

"Because of this ordinarily sensible inference, it has apparently been said by the reviewing courts that it is incumbent upon the first wife to search the records of every jurisdiction in which the decedent may have established a 'residence' during the intervening years and to demonstrate positively that no divorce decree was ever rendered in any of those jurisdictions. I do not find, however, in the decisions filed by counsel, any declaration that any such search of the records of all potential areas of conceivable divorce jurisdiction is absolutely necessary, in every case, to rebut the presumption of the validity of the second marriage. I think I must assume that any other form of reasonable evidence, whether circumstantial, evidentiary or documentary when presented must be weighed in the customary fashion to determine whether it is sufficient to overcome the presumption."

In our view the learned trial judge was correct in so holding. It would not appear that there is any authority requiring us to conclude, as contended by petitioner, that the only way to prove the negative fact that a divorce has

---

travelled to such locations on business trips and did indeed maintain an office in Lima, Peru, such circumstances fall short of establishing residence or domicile so as to require Mildred to search the records of those cities.

not been obtained is by a showing that there was a search of the pertinent public records. Rather, it would seem that whether such proof is necessary in a particular case would depend upon the entire facts and circumstances presented. In *Estate of Smith,* 33 Cal.2d 279, 281 [201 P.2d 539], the court states as follows: "That burden is sustained if the evidence, in the light of all reasonable inferences therefrom, shows that the first marriage was not so dissolved or annulled. . . . 'There can be no absolute presumption against the continuance of the life of one party to a marriage, in order to establish the innocence of the other party to a subsequent marriage; much less can there be a rigid presumption of a dissolution of the first marriage by divorce, in order to make out such innocence. . . . In any particular case, the question must be determined, like any other question of fact, upon a consideration of the attending facts and circumstances, and such inferences as fairly and reasonably flow therefrom.' (1 Jones, Commentaries on Evidence, 103-104.)"

In *Estate of Cooper* (1950) 97 Cal.App.2d 186, 191 [217 P.2d 499] the court states: "The correspondence referred to above, together with numerous other letters written by decedent to appellant over a period of years, and which are in evidence, are substantial proof that he never obtained a divorce from her; that having remarried without terminating his first marriage he was constantly worried over the possibility of her filing suit for divorce in Los Angeles and that such action on her part would reflect upon his reputation and ruin him in his practice; that he was very much afraid of having anyone in Los Angeles know that they had not been divorced and for that reason he even went so far as to suggest that if she decided to come to Los Angeles and live with him they remarry if necessary so the truth would not be known. These letters together with the evidence that appellant had been receiving half of his pension, which must have been with decedent's knowledge, and that he had continued sending her money even after his child became of age are sufficient to sustain the burden of proof cast upon her that decedent had not obtained a divorce from her and to overcome the presumption of validity of the subsequent marriages." In *Estate of Goldberg, supra,* 203 Cal.App.2d 402, the court examined the totality of the evidence and concluded that the evidence presented by the first wife was insufficient to rebut the strong presumption of the validity of the second marriage. However, in that case, the only evidence to rebut the presumption was the fact that a final decree of divorce between the decedent and his first wife was entered several weeks after the second marriage. Had the court in that case considered a record search to be a mandatory requirement to rebut the presumption, the opportunity to state such a rule was clearly presented as then it would have been unnecessary for the court to consider the effect of the evidence which was presented by the first wife.

We are not unmindful that in *Estate of Smith, supra,* 33 Cal.2d 279, and *Estate of Cooper, supra,* 97 Cal.App.2d 186, there was some evidence that a record search had been undertaken and that that evidence was undoubtedly considered by the court in each case; however, neither court stated the requirement of a search to be mandatory and obviously each court considered the evidence of search as one fact along with many others in arriving at its conclusions.

While we have set forth our view that a record search is not a mandatory requirement in order to rebut the presumption of the validity of a second marriage and that in a particular case other evidence, if cogent and compelling, may be sufficient to meet the acknowledged heavy burden imposed upon the party attacking it, it is doubtful under the facts of this case that such a search would be required in any event. As noted in footnote 1, the only evidence of residence or domicile of the decedent relates solely to Los Angeles County. It has never been necessary under the law to examine the public records of jurisdictions other than those in which the parties to the marriage were domiciled. (*Estate of Smith, supra,* 33 Cal.2d 279, 283.) As to Los Angeles County it is inconceivable that decedent could have obtained a divorce without notice to his spouse. Mildred testified that she had never been served with divorce papers by the decedent, and it must be assumed that the respondent court gave credence to that testimony.

Finally, we find that the evidence presented to the respondent court by Mildred was sufficient to support that court's finding that she had successfully rebutted the presumption of the validity of the second marriage. We summarize that evidence as follows: decedent lived with Mildred, as her husband, continuously for 40 years and until the date of his death; he had occupied the same residence with her during that time, slept there, kept his clothing there and paid all of the expenses of the family; decedent had never been separated from Mildred; income tax returns had been prepared and filed each year by the decedent in which he listed Mildred as his wife; in 1945, decedent had pleaded with Mildred not to obtain a divorce after he told her about his affair with Josephine; decedent had publicly held out Mildred to be his wife, presenting her as such to his friends and family, once as recently as 1968 at a church ceremony in which his granddaughter was married; decedent and Mildred had maintained a joint bank checking account until the time of his death.

There is thus substantial evidence to support the findings of the respondent court that Mildred was the legal surviving spouse of Juan Vargas, Jr.

The alternative writ is discharged. The petition for peremptory writ of mandate is denied.

Stephens, Acting P. J., and Reppy, J., concurred.