WESTERN CONFERENCE OF TEAMSTERS PENSION TRUST FUND, Plaintiff,

v.

Bessie Louise JONES and Karen Knight Jones, Defendants.

No. C 86–0305 SC.

United States District Court, N.D. California.

Oct. 24, 1986.

Pillsbury, Madison & Sutro, Robert A. Gordon, Tom C. Clark II, San Francisco, Cal., for plaintiff.

Bittner and Van Dyk, San Francisco, Cal., for defendant Bessie Louise Jones.

James R. Abernathy, II, San Francisco, Cal., for defendant Karen Knight Jones.

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

CONTI, District Judge.

Plaintiff Western Conference of Teamsters Pension Trust Fund ("Trust Fund") brings this action seeking a declaratory judgment regarding the defendants' rights to post-death benefits under a private pension plan.

Earl H. Jones ("Earl") was a participant in the Trust Fund's pension plan. Earl died on March 11, 1985. Shortly thereafter, defendants asserted competing claims as Earl's "surviving spouse" for death and survivor benefits. Defendant Bessie Louise Jones ("Bessie") married Earl on November 4, 1960. On January 27, 1972, Bessie filed a petition for dissolution of marriage which stated that the parties had separated on August 10, 1971. No final dissolution order was ever entered regarding Bessie's divorce petition. On April 14, 1973, Earl allegedly married defendant Karen Knight Jones ("Karen"). Earl and Karen had two children and lived together until Earl's death. Karen claims she did not know until after Earl's death that no record of final dissolution was entered regarding Earl's marriage to Bessie.

The benefits at issue are known as the Lump Sum Death Benefit, the Surviving Spouse Benefit and the Pre-Retirement Benefit to Spouse. Assuming certain requirements are met, the Pre-Retirement Benefit to Spouse is paid to the surviving spouse of the decedent; the Surviving Spouse Benefit is paid to the surviving spouse of the decedent so long as there are no surviving children; and, the Lump Sum Death Benefit is paid to the surviving spouse of the decedent in the event the decedent fails to name a beneficiary. Pentz Declaration, Ex. A: pp. 28, 26 & 31. In the present case, Earl failed to name a beneficiary for the Lump Sum Death Benefit. Pentz Declaration, ¶ 5.

This matter is presently before the court on the Trust Fund's motion for summary judgment. The Trust Fund asserts that *Allen v. Western Conference of Teamsters Pension Trust Fund,* 788 F.2d 648 (9th Cir.1986) requires payment of the pension benefits to the legal spouse of the decedent, Bessie. The Trust Fund also asserts that California's "terminable interest doctrine" precludes Karen from making any

claim to Earl's death benefits. Bessie does not oppose the Trust Fund's motion. Karen opposes the Trust Fund's motion asserting a quasi-marital property interest in Earl's pension benefits.

Summary judgment is proper only when there is no genuine issue of material fact, or when, viewing the evidence and the inferences that may be drawn therefrom in the light most favorable to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed.R.Civ.P. 56(c); *Bank of California, N.A. v. Opie*, 663 F.2d 977, 979 (9th Cir.1981). The burden of establishing the absence of a genuine material fact is on the moving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). Once a summary judgment motion is made and properly supported, however, the adverse party may not rest on the mere allegations of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). *See also, Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir.1983); *Ruffin v. County of Los Angeles*, 607 F.2d 1276, 1280 (9th Cir.1979), *cert. denied*, 445 U.S. 951, 100 S.Ct. 1600, 63 L.Ed.2d 786 (1980).

In *Allen*, supra, the Ninth Circuit denied pension benefits to a putative spouse because the plan limited the class of beneficiaries to the legal spouse of the decedent. The Court found that California law did not prohibit parties from agreeing on contract terms that give different treatment to putative spouses than to legal spouses. *Allen*, 788 F.2d at 650. However, the Court expressly declined to address:

> whether [the putative spouse] has any claim to the pension fund as quasi-marital property on account of contributions that may have been made during the putative marriage, *see Patillo v. Norris*, 65 Cal.App.3d 209, 135 Cal.Rptr. 210 (1976).

*Allen*, 788 F.2d at 650, ft.1.

In the present action, the Trust Fund argues that *Allen* determines the defendants' rights regarding Earl's pension benefits. Although *Allen* does determine the

rights of a legal surviving spouse asserting a claim as a beneficiary of the pension agreement, *Allen* does not apply to a putative spouse's claim asserting a quasi-marital property interest in the pension benefits. Unlike the putative spouse in *Allen*, Karen does not assert her right to the pension benefits solely through the contractual terms of the trust agreement. Karen also claims, as Earl's putative spouse, a portion of Earl's pension benefits as quasi-marital property. In *Allen*, the Ninth Circuit expressly left unanswered the merits of such a claim. *See, Allen*, 788 F.2d at 650, ft. 1.

■ The Employee Retirement Income Security Act of 1974 ("ERISA") does not preempt state community property laws affecting the distribution of pension benefits. *Carpenters Pension Trust for Southern California v. Kronschnabel*, 632 F.2d 745, 748 (9th Cir.1980).

California law allows a court to find a person a "putative spouse" if that person entered a marriage with the good faith but mistaken belief that the marriage was valid. Cal.Civ.Code § 4452; *Brown v. Devine*, 574 F.Supp. 790, 793 (N.D.Cal.1983).

■ The court finds that Karen is Earl's putative spouse. Cal.Civ.Code § 4401 voids "from the beginning" bigamous marriages. Here, the parties have failed to find any final order recording the dissolution of Earl's and Bessie's marriage. Pentz Declaration, ¶ 11; Defendant Karen Jones Brief, p. 2; Answer of Bessie Louise Jones, ¶ 5. At the time of Karen's and Earl's union then, Earl was still legally married to Bessie. Thus, Karen's "marriage" to Earl is void. The facts indicate that Karen entered her "marriage" with Earl believing in good faith that their union was valid. On April 14, 1973, Karen and Earl obtained a marriage certificate which listed Earl as "divorced". Pentz Declaration, Ex. E. During their union, Karen bore two children to Earl. Defendant Karen Jones Brief, Exs. 1 & 2. The couple represented themselves as husband and wife as evidenced by Earl's death certificate listing

Karen as Earl's "wife". Pentz Declaration, Ex. B. Lastly, the Trust Fund has produced no evidence refuting Karen's good faith belief in her legal marital status.

The Trust Fund argues that this court cannot make a determination concerning Karen's marital status because the Trust Fund reserves the right to make that determination in the first instance. The Trust Fund cites authority requiring an employee or beneficiary to exhaust his administrative remedies before bringing an action under ERISA. *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir.1980).

The court does not find *Amato* applicable. The Trust Fund brought the present declaratory action, *not* the beneficiaries of the pension plan. In fact, the Trust Fund specifically asks this court to determine "whether a legal spouse or a putative spouse is entitled to death and survivor benefits under its pension plan." Plaintiff's Brief, p. 1. Therefore, the court rejects the Trust Fund's assertion that the court should not determine Karen's marital status at this time.

For the reasons stated, the court finds that Bessie is the legal spouse of Earl and Karen is Earl's putative spouse.

Cal.Civ.Code § 4452 provides that property acquired during a putative marriage, that would have been community property or quasi-community property if the marriage had been valid, is defined as "quasi-marital property." Quasi-marital property is divided in the same manner as community property or quasi-community property. Cal.Civ.Code § 4452.

Specifically regarding pension benefits, California law considers such assets, vested or unvested, as community property to the extent these benefits derive from employment during marriage. *In re Marriage of Brown*, 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561 (1976). Thus, a putative spouse can claim an interest in such benefits as quasi-marital property. Cal.Civ. Code § 4452.

In *Patillo v. Norris*, 65 Cal.App.3d 209, 135 Cal.Rptr. 210 (1976), the California Appellate Court applied these basic principles to the claims of a putative spouse and a legal spouse over the same death benefits. In *Patillo*, supra, decedent married his legal spouse in 1942. The couple separated after seven years of marriage. No final order regarding dissolution of marriage was entered. In 1951, decedent married his putative spouse and lived with her for eighteen years until they separated in 1969. After his putative spouse left, decedent and his legal spouse reconciled and lived together until decedent's death in 1972. The designated beneficiary of the union benefits was decedent's neighbor.

In reconciling the competing claims, the *Patillo* court found that:

> The basic principle involved in the case of a married man who designates someone other than his wife as the named beneficiary of insurance and pension benefits is that, to the extent the premiums were paid with community funds or the benefits were earned by the husband from his employer during the marriage, on his death the wife is entitled to set aside the gift made to named beneficiary without consideration and without her consent to the extent of one-half of the community interest.... The theory is that the husband has the power to give his half of the community property to the named beneficiary, but not the wife's half.

*Patillo*, 65 Cal.App.3d at 217, 135 Cal.Rptr. 210.

The *Patillo* court then proceeded to divide up the respected interests of the claimants. The appellate court directed the decedent's one-half interest in the insurance and pension benefits to the named beneficiary. The *Patillo* court then divided up the remaining proceeds between the legal wife and the putative spouse according to their respective community and quasi-marital interests. Since the case did not involve the decedent maintaining two households and two wives simultaneously, the *Patillo* court applied Cal.Civ.Code § 5118 to separate the two wives' interests. *Id.*, at 217–19, 135 Cal.Rptr. 210. Cal.Civ.Code § 5118

provides that a spouse cannot claim a community property interest in assets acquired by the other spouse while the two are separated.

■ In the present case, Karen has a quasi-marital property interest in Earl's death benefits. All contributions to Earl's pension fund occurred between January 1, 1972 and January 1, 1984. Defendant Karen Jones Brief, Exs. 3 & 4. Karen "married" Earl on April 14, 1973 and lived with him as husband and wife until Earl's death, March 11, 1985. Pentz Declaration, Exs. B & E. Thus, contributions to the pension fund from April 14, 1973 to January 1, 1984 derived from Earl's employment while "married" to Karen. Karen then, as Earl's putative spouse, has a quasi-marital property interest in those portions of the pension fund attributable to Earl's employment while "married" to Karen.

■ Bessie however does not have a community property interest in Earl's pension benefits. Cal.Civ.Code § 5118 provides that a spouse cannot claim a community property interest in assets acquired by the other spouse while the two are separated. Bessie and Earl separated on August 10, 1971. Pentz Declaration, Ex. D. Earl did not begin contributing to his pension benefits until January 1, 1972. Defendant Karen Jones Brief, Exs. 3 & 4. Since Earl's contributions began after the couple had separated, Bessie cannot claim a community interest in Earl's pension. *See, Marriage of Bouquet*, 16 Cal.3d 583, 128 Cal.Rptr. 427, 546 P.2d 1371 (1976) (holding Cal.Civ.Code § 5118 be given retroactive application).

Bessie however can claim Earl's separate and community interests in the pension benefits as the beneficiary of the pension agreement. In *Allen*, supra, the Ninth Circuit found that the parties did not contravene public policy by construing the term "spouse" in the trust agreement to mean "legal spouse." *Allen*, 788 F.2d at 650. Here, the Trust Fund has uniformly interpreted the term "spouse" or "surviving spouse" to mean "legal spouse" or "surviving legal spouse." Pentz Declaration, ¶ 11.

Therefore, Bessie, as Earl's legal spouse, should receive those death benefits subject to the trust agreement's provisions. However, since Earl did not have the power to transfer Karen's community interest in the pension fund, Bessie's interest only includes Earl's separate and community interest in those death benefits. *See, Patillo*, 65 Cal.App.3d at 217, 135 Cal.Rptr. 210.

The Trust Fund asserts that California's "terminable interest doctrine" precludes Karen or Bessie from asserting a community property claim to Earl's death benefits. Where applicable, the "terminable interest doctrine" states that the community interest in a pension terminates upon the death of either spouse. *Benson v. City of Los Angeles*, 60 Cal. 2d 355, 33 Cal.Rptr. 257, 384 P.2d 649 (1963); *Waite v. Waite*, 6 Cal. 3d 461, 99 Cal.Rptr. 325, 492 P.2d 13 (1972). Thus, the Trust Fund argues that Karen's or Bessie's community property claims to Earl's pension benefits terminated at the death of Earl.

■ The court rejects the Trust Fund's assertion. Although the California Supreme Court has yet to rule on the issue, this court concludes that the California Supreme Court would find that the "terminable interest doctrine" does not apply to private pension plans. In both *Benson*, supra and *Waite*, supra, the California Supreme Court applied the "terminable interest doctrine" to *public pension plans*. The California Supreme Court apparently reasoned that "governmental pension statutes impliedly repealed the community property statutes." *Bowman v. Bowman*, 171 Cal.App.3d 148, 155, 217 Cal.Rptr. 174 (1985). This same reasoning would not apply to private pension plans. *See*, Reppy, *Community and Separate Interests in Pensions and Social Security Benefits after Marriage of Brown and ERISA* 25 U.C.L.A. L.Rev. 417, 443–482 (1972). The California Appellate Court concluded in *Bowman*, supra, that:

[t]he reason for the rule was to prohibit interference with the contractual mandates and policy considerations of public

employment retirement plans. We see no purpose to be served in extending this rationale "to cut off the nonemployment spouse's community property rights in private, *i.e. nongovernmental,* pension...."

*Bowman,* 171 Cal.App.3d at 155, 217 Cal. Rptr. 174, *quoting,* Culhane, *Terminable Interest Doctrine* 14 Sw. U.L.Rev. 613, 642 (1984) (emphasis in original); *but see, Estate of Allen,* 108 Cal.App.3d 614, 166 Cal. Rptr. 653 (1980). In any event, recent decisions of the California Supreme Court indicate that "the terminable interest doctrine has passed into legal extinction." *Chirmside v. Board of Administration,* 143 Cal. App.3d 205, 211, 191 Cal.Rptr. 605 (1983), *citing, Henn v. Henn,* 26 Cal. 3d 323, 161 Cal.Rptr. 502, 605 P.2d 10 (1980) and *In re Marriage of Brown,* 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561 (1976).

Finally, the Trust Fund argues that Karen cannot assert a community interest to the Surviving Spouse Benefit because the plan bases the payment of this benefit on the "spouse's" status at the time of the decedent's death. The court rejects the Trust Fund's argument. Whether or not the benefit is paid does not change the character of the underlying asset. The Surviving Spouse Benefit partially derives, as do all the other death benefits, from Earl's employment during his "marriage" to Karen. Thus, whether these benefits are vested or unvested, Karen has a quasi-marital property interest in them. *See, In re Marriage of Brown,* 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561 (1976).

The court agrees with the Trust Fund that the payment of the Surviving Spouse Benefit is conditioned on the age and circumstances of Earl's legal spouse, Bessie and not Earl's putative spouse, Karen. *See, Allen,* 788 F.2d at 650.

In summary, the court finds that Bessie is Earl's legal spouse and Karen is Earl's putative spouse. As the pension plan's beneficiary, Bessie has a right to Earl's separate and community interests in the death benefits. Karen has a quasi-marital interest in the death benefits to the extent such benefits derive from Earl's employment during his putative marriage to Karen.

Therefore, the court directs the parties to submit briefs regarding the division of Earl's death benefits consistant with this order. The court orders the Trust Fund to file its initial papers by November 7, 1986. Any opposition must be filed by November 21, 1986. The final reply brief shall be filed by December 19, 1986. The court schedules a hearing on this matter for January 9, 1987 at 10:00 A.M.

In accordance with the foregoing, it is hereby ordered that:

(1) the Trust Fund's motion for summary judgment is denied; and,

(2) the parties are directed to submit briefs regarding the division of Earl's death benefits consistent with this order. The court orders the Trust Fund to file its initial papers by November 7, 1986. Any opposition must be filed by November 21, 1986. The final reply brief must be filed by December 19, 1986. The court schedules hearing on this matter for January 9, 1987 at 10:00 A.M.