**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 20 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

VERGIE BURKS,

       Plaintiff-Appellee,

v.

KENNETH S. APFEL, Commissioner,
Social Security Administration,

       Defendant-Appellant.

No. 99-1532

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 99-K-359)**

---

Submitted on the briefs:

Peter Komlos-Hrobsky, Colorado Legal Services, Denver, Colorado,
for Plaintiff-Appellee.

David W. Ogden, Acting Assistant Attorney General, Washington, D.C.,
Thomas L. Strickland, United States Attorney, Denver, Colorado, John C. Hoyle,
and Anthony A. Yang, Attorneys, Appellate Staff, Civil Division, Department of
Justice, Washington, D.C.; Deana R. Ertl-Lombardi, Chief Counsel, Region VIII,
and Allan D. Berger, Assistant Regional Counsel, Office of General Counsel,
Social Security Administration, Denver, Colorado, of Counsel, for
Defendant-Appellant.

---

Before **BRORBY** , **PORFILIO** , and **MURPHY** , Circuit Judges.

**MURPHY**, Circuit Judge.

---

The Commissioner of Social Security appeals the district court's order reversing the decision of the administrative law judge (ALJ), finding that plaintiff Vergie Burks was not entitled to Social Security widow's insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. [1] Contrary to the ALJ, the district court found Vergie to be the putative spouse of the deceased Wesley Burks under California law, and therefore eligible to receive widow's benefits. We have jurisdiction pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, and we reverse.

## I.  Background

Vergie and Wesley Burks met in Colorado in 1965 and were formally married in California on February 27, 1977.  In approximately 1981, Wesley informed Vergie that he had been previously married to Earlean Burks, and was, as far as he knew, still legally married to Earlean.  Following this revelation, Wesley and Vergie went to a divorce clinic where Wesley filed a petition for

---

[1]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.   *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  Therefore, the parties' requests for oral argument are denied, and the case is ordered submitted without oral argument.

divorce from Earlean. Although Vergie alleges that Wesley told her the divorce was final, a search of the Los Angeles County records did not produce any evidence of a final divorce between Wesley and Earlean.

Vergie and Wesley continued to cohabit until 1982 when they separated. At that time Vergie lost all meaningful contact with Wesley. Wesley subsequently died in California in 1986. Vergie did not learn of his death until sometime between 1988 and 1989, and she did not apply for Social Security widow's insurance benefits until 1994. Wesley's death certificate indicated that at the time of his death, he was living with his first wife, Earlean, in Los Angeles. Earlean was listed on his death certificate as the informant, and was present at the hospital at the time of his death. Following his death, Earlean applied for and received Social Security widow's insurance benefits based on Wesley's earnings.

In denying Vergie's application for benefits, the ALJ determined that because Wesley had never legally divorced Earlean, his marriage to Vergie was void. The ALJ further determined that the marriage of Vergie and Wesley could not be "a deemed valid marriage" as defined by 20 C.F.R. § 404.346 because Vergie was not living with Wesley at the time of his death. [2] The ALJ then

---

[2] The Social Security regulations provide that, if a couple enters into a marriage ceremony that would have resulted in a valid marriage except for a legal impediment, such as the validity of a prior marriage, and if the couple were living in the same household at the time of death of one member of the couple, the

(continued...)

applied the law of California as required by § 404.345, [3] and determined that Vergie was not legally married to Wesley under California law, could not receive his property under intestate succession, and was therefore not qualified to receive widow's insurance benefits.

Relying on *In re Estate of Vargas*, 36 Cal. App. 3d 714 (1974), the district court disagreed, concluding that, under California law, Vergie would be considered a "putative spouse," her marriage would be valid for purposes of inheritance, and she was therefore, entitled to widow's benefits. *See* Joint App. at 167. The Commissioner appeals this conclusion, arguing that because Vergie did not have a continuing good faith belief that her marriage to Wesley was valid, she cannot be considered a putative spouse under California law.

---

[2](...continued)
marriage can be deemed valid. *See* 20 C.F.R. § 404.346(a) and (b); 42 U.S.C. § 416(h)(1)(B)(i).

[3]     Section 404.345 provides that the validity of the marriage relationship is determined by looking to the law of the state where the deceased had a permanent home at the time of death. The marriage will be considered valid "if under State law you would be able to inherit a wife's, husband's, widow's, or widower's share of the insured's personal property if he or she were to die without leaving a will." *Id.*; *see also* 42 U.S.C. § 416(h)(1)(A)(ii).

## II. Discussion

In reviewing the Commissioner's denial of Vergie's application for benefits, we must determine whether there is substantial evidence to support the decision and whether the Commissioner correctly applied the applicable legal standards. *See Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999). The social security regulations provide that the laws of the state where the deceased insured had a permanent home, in this case California, will apply in deciding the nature of Vergie's relationship to Wesley and in determining whether she is his widow. *See* 20 C.F.R. § 404.345. The regulations further provide that Vergie's relationship as the widow is established if Vergie and Wesley Burks were validly married under the laws of California at the time Wesley died. *See id*.

On appeal, the Commissioner asserts that the district court erred in concluding that Vergie was a "putative spouse" under California law. Under California law, "[a] putative spouse is one who believes in good faith that she is a party to a valid marriage, though the marriage is invalid." *Neureither v. Workmen's Compensation Appeals Bd.*, 15 Cal. App. 3d 429, 433 (1971); *see also* Cal. Fam. Code § 2251. "'Good faith belief' is a legal term of art, and in both the civil and criminal law a determination of good faith is tested by an objective standard." *In re Marriage of Vryonis,* 202 Cal. App. 3d 712, 720 (1988). Moreover, in the context of determining putative spouse status, the good faith

-5-

belief must be in the existence of a lawful California marriage and must be reasonable. *See id.* at 721.

In reversing the Commissioner, the district court determined that because Vergie held a good faith belief in the validity of her marriage to Wesley at its inception, she met the California test and qualified for widow's benefits. As pointed out by the Commissioner on appeal, of the cases relied on by Vergie to support her assertion that the district court was correct, none addresses the issue of what happens to putative spouse status when this good faith belief is subsequently lost. *See, e.g. In re Marriage of Recknor*, 138 Cal. App. 3d 539, 544 (1982) (addressing situation where spouse did not have a good faith belief in the validity of the marriage at its inception); *In re Estate of Krone*, 189 P.2d 741, 768 (Cal. Dist. Ct. App. 1948) (determining existence of putative marriage where spouse was ignorant of impediment throughout entire course of marriage).

The case relied on by the district court in its decision is likewise unhelpful. *In re Estate of Vargas*, 36 Cal. App. 3d 714, involved a man who had been husband and father to two separate families for twenty-four years. Upon his death, the court was faced with the question of division of his estate. The court held that, because the second wife held a good faith belief in the validity of the marriage, she was entitled to share in the estate. *See id.* at 717. This supports the district court's holding that, under California law, a putative spouse must hold

a good faith belief in the validity of the marriage at the time of the marriage. Nevertheless, like the other cases relied on by Vergie, *In re Estate of Vargas* does not address the question in this case of whether putative spouse status can be lost if the spouse subsequently learns of the impediment to the validity of the marriage.

In *Tatum v. Tatum*, 241 F.2d 401, 411 (9th Cir. 1957), the Ninth Circuit addressed whether, under California law, an appellant was a "widow" for purposes of the Federal Employees' Group Life Insurance Act of 1954. The court interpreted *Vallera v. Vallera*, 134 P.2d 761, 762 ( Cal. 1943), as holding "that the sin[e] qua non of a putative marriage is a good faith belief in the validity of the marriage at its inception." *Tatum*, 241 F.2d at 411. Several more recent California cases have stated that "[t]he [good faith] belief held at the time of the alleged marriage is the determining factor." *In re Estate of Goldberg*, 203 Cal. App. 2d 402, 412 (1962); *see also Neureither*, 15 Cal. App. 3d at 434. The *Tatum* court acknowledged that there was no California case which would permit a putative spouse to retain that status "after acquiring knowledge of the infirmity in his or her marriage, [and] continu[ing] to live under the same conditions, without undertaking any action to perfect the marital status." 241 F.2d 411. The court labeled the question as "novel" in California, but opined that if faced with the question, "the courts of that State would . . . deem it

essential that the good faith belief continue throughout the life of the marriage." *Id.* The court then held that when the appellant learned of the existence of a first marriage, she lost the status of putative spouse. *See id.*

There are very few cases in which California state courts have addressed a similar issue. In *Gallaher v. State Teachers' Retirement Sys.*, 237 Cal. App. 2d 510 (1965), the California Court of Appeals considered the claims of Wilma and Elsie to the benefits of a teachers' retirement system upon the death of Harold. The court determined that, at the time of her ceremonial marriage to Harold in 1959, Elsie held a good faith belief in the validity of her marriage based upon her reliance on Harold's Nevada divorce decree from Wilma. The court found, however, that in 1960, Elsie learned that Wilma had commenced a divorce action against Harold in California. Wilma argued that there was no evidence that Elsie's good faith belief in the validity of her marriage to Harold continued beyond 1960. Because the trial court had not found "as to Elsie's good faith on any date subsequent to the time of her marriage to Harold," the appellate court determined that "Elsie's *continuing* belief in the legality of her marriage to Harold [was] not altogether free from conflict." *Id.* at 519-20 (emphasis added). The court then remanded the case for a trial court determination of the duration of Elsie's putative marriage and to award benefits accordingly. *See id.* at 520*; see also In re Marriage of Monti*, 135 Cal. App. 3d 50, 55 (1982) (holding that

California's putative spouse statute must be interpreted to include "a divorced spouse who continues to live with the ex-spouse *in ignorance* of the final divorce decree and with a good faith belief in the *continuing* validity of the marriage") (emphasis added).

In *Lazzarevich v. Lazzarevich*, 200 P.2d 49 (Cal. Dist. Ct. App. 1948), the court considered a suit by an alleged putative wife for compensation for services rendered during the course of a marriage. The parties were married in 1921 and separated and filed for divorce in 1932. Although both parties knew that an interlocutory decree had been entered, neither was aware that the husband's attorney had obtained a final decree. Thereafter, the parties reconciled. The parties again separated on August 1, 1945, and when the wife sought a divorce, she learned on August 10, 1945, that the divorce commenced in 1932 had been finalized. She again returned to live with her husband on October 1, 1945, and remained with him until April 1, 1946. In awarding the wife compensation for household services rendered following the divorce, the court concluded that the wife had continued to live with the husband in the good faith belief that her marriage was valid. In refusing compensation for the period between August 10, 1945 and April 1, 1946, the court stated that "[a]fter August 10, 1945, plaintiff was no longer an innocent, deluded, putative wife. She no longer believed that

she was defendant's wife. She knew that she was not. The relationship between the parties was meretricious after October 1, 1945." *Id.* at 55.

"The putative marriage doctrine protects the expectations of innocent parties who believe they are lawfully married." *Vryonis,* 202 Cal. App. 3d at 723. The parties here do not dispute that at the time of the marriage Vergie had a good faith belief in the validity of her marriage to Wesley. This good faith belief continued for a number of years. It is clear from the record, however, that Vergie's innocent belief in the validity of her marriage to Wesley ended when Wesley told her that he was married to Earlean and had never taken steps to dissolve that marriage. At that point, under *Gallaher* and *Lazzarevich*, Vergie ceased to be a putative spouse. [4]

Even though when Wesley's marriage to Earlean was revealed, they visited a divorce clinic, filed the necessary documents in order to begin the process of Wesley's divorce from Earlean, and continued to cohabit for a period of time, Wesley did not follow through and conclude the divorce process and Vergie and

---

[4] "Although we are not required to follow the dictates of an intermediate state appellate court, we may view such a decision as persuasive as to how the state supreme court might rule." *Sellers v. Allstate Ins. Co*., 82 F.3d 350, 352 (10th Cir. 1996); *see also Lowell Staats Mining Co. v. Pioneer Uravan, Inc.*, 878 F.2d 1259, 1269 (10th Cir. 1989) ("In the absence of a state supreme court ruling, a federal court must follow an intermediate state court decision unless other authority convinces the federal court that the state supreme court would decide otherwise."). Therefore, without any direct authority to the contrary, we view *Gallaher* and *Lazzarevich* as persuasive.

-10-

Wesley took no further steps to validate their marriage. [5]  Moreover, once Vergie and Wesley separated, Vergie had no further contact with Wesley, and it appears that Wesley reconciled with Earlean, and died cohabiting with her. As a consequence, Vergie's putative spouse status was not resurrected.

Vergie also cannot attain widow status through a common law marriage. Although California recognizes common-law marriages created in states which recognize them, California does not recognize common-law marriages created in California.  *See Tatum* , 241 F.2d at 407 (recognizing that under California state law only ceremonial marriages can be contracted).  Therefore, because Vergie and Wesley were married in California, at the time Vergie learned that her marriage to Wesley was legally impeded, under state law, their relationship became, at best, meretricious.  *See Lazzarevich* , 200 P.2d at 55.

We also conclude that Vergie's argument that her marriage to Wesley should be considered presumptively valid to be without merit.  It is an undisputed rule in California that:

> When a person has entered into two successive marriages, a
> presumption arises in favor of the validity of the second marriage,
> and the burden is upon the party attacking the validity of the second
> marriage to prove that the first marriage had not been dissolved by

---

[5]     At the hearing before the ALJ, Vergie suggested that the divorce papers were tampered with in Los Angeles County.  This appears to be a conclusory claim with no factual support.

-11-

the death of a spouse or by divorce or had not been annulled at the time of the second marriage.

*Vargas v. Superior Court*, 9 Cal. App. 3d 470, 473 (1970) (citation omitted); *but see Tatum*, 241 P.2d at 407 (holding that "with two presumptively valid marriages in existence, the ultimate burden rests on the party who advocates the second to prove the invalidity of the first"). Here, Vergie argues that the presumptive validity of her marriage to Wesley was not adequately rebutted. She contends that the Commissioner did not prove the existence of the prior marriage or adequately search the records of jurisdictions where Wesley and Earlean were domiciled to ascertain whether a divorce was obtained.

In *Patillo v. Norris*, 65 Cal. App. 3d 209, 214 (1976), the court stated that the rebuttable presumption of validity "may be overcome upon a consideration of the attending facts and circumstances and such inferences as fairly and reasonably flow therefrom." In rejecting Vergie's argument, the ALJ determined that the presumption of the validity of the second marriage was adequately overcome by the statements and actions of Wesley. Wesley himself told Vergie of his prior undissolved marriage and agreed to begin divorce proceedings. When Wesley and Vergie separated it appears that Wesley returned to live in Earlean's home where he remained until his death. At the time of his death, Earlean applied for and received widow's benefits as Wesley's legal spouse, a step Vergie did not take until eight years later. Moreover, the records of Los Angeles County, where

-12-

Earlean resided, produced a petition for divorce filed by Wesley, but no final decree. Therefore, although there was no evidence of any further search of court records, there was sufficient substantial evidence to support the court's finding that the presumption of validity had been overcome. *See, e.g., id.* (finding substantial evidence to support rebuttal of presumption absent search of court records); *Vargas,* 9 Cal. App. 3d at 475-76 (holding that search of pertinent public records not required if evidence presented and inferences drawn therefrom show that first marriage is valid).

### III. Conclusion

We agree with *Gallaher*, *Lazzarevich*, and the Ninth Circuit's reasoning and decision in *Tatum*, and hold that, even though Vergie held a good faith belief in the validity of her marriage to Wesley at the time she entered into it, she was stripped of that belief when she learned that Wesley was still married to Earlean. Because Vergie could not have a good faith belief that Wesley divorced Earlean, Vergie cannot be afforded putative spouse status under California law for purposes of widow's benefits under the Social Security Act.

The judgment of the United States District Court for the District of Colorado is REVERSED.

-13-